**Victor R. McNAIR and Tré K. McNair, Plaintiffs–Appellants,**

v.

**Sean COFFEY, Defendant–Appellee.**

No. 00–1139.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 1, 2000.

Decided Dec. 8, 2000.

them at gunpoint for the offense of not paying parking tickets. The jury concluded that, by treating these scofflaws as if they were armed bank robbers apprehended after a high speed chase, officer Coffey used excessive force and thus violated the fourth amendment, as interpreted in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), and *Lester v. Chicago*, 830 F.2d 706 (7th Cir. 1987).

Taken in the light most favorable to the verdict, as it must be, the evidence shows that the McNairs were driving peaceably to church one evening when officer Coffey put on his lights to signal them to stop. Coffey had adequate reason to do this: a check showed that the license plate had been suspended for nonpayment of parking fines. Although Coffey was not interested in this offense but wanted instead to look into the possibility of drugs, probable cause for the stop was not undercut by Coffey's desire to investigate a different offense. *Whren v. United States*, 517 U.S. 806, 811–13, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Driving in a rough neighborhood, the McNairs were hesitant to stop on a poorly lighted street. So they did not immediately pull over but drove slowly to a well illuminated gas station, where they pulled off the road and waited for the police car. Officer Coffey meanwhile had radioed his dispatcher that a chase was in progress and called for armed backup. The McNairs stopped about a mile from the place where Coffey turned on the patrol car's flashing lights. The price of this delay was that the police treated the McNairs like desperadoes who had been firing tommy guns out the windows.

According to Coffey, this was a "high risk traffic stop"—not only because of the neighborhood but also because the McNairs did not stop immediately and the officer was not sure how many persons were in the car. Coffey's response was to crouch behind the door of his squad car, point a semiautomatic pistol at the

Jeffrey P. Sweetland (argued), Shneidman, Myers, Dowling & Blumenfield, Milwaukee, WI, for Plaintiffs-Appellants.

Timothy J. Yanacheck (argued), Stilp & Cotton, Madison, WI, for Defendant-Appellee.

Before CUDAHY, COFFEY, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

A jury awarded brothers Victor and Tré McNair $5,000 apiece to compensate them for the fright and indignity they suffered when officer Sean Coffey pulled over their car and, with the aid of seven other officers (a total of eight squad cars), arrested

McNairs, and demand over a loudspeaker that they put their hands against the inside roof of the car. They complied without making any suspicious move. When other patrol cars had arrived, and at least four more officers had the McNairs in their sights, Coffey ordered them to get out with their hands in the air; again they complied peaceably. Both McNairs were handcuffed and arrested—a step that enabled Coffey to search their persons and their car. (He found nothing unlawful.) Tré, who had been the passenger, was released after about 25 minutes, and Victor after an hour. Both were shaken by the experience.

Neither McNair was roughed up, and although the officers' histrionics seem a bit much for a traffic stop, we do not deprecate the risk that confronts the police in these situations. Perhaps Coffey could have argued that an excessive *display* of force must be distinguished from an excessive *use* of force. See *Gumz v. Morrissette*, 772 F.2d 1395, 1408–09 (7th Cir.1985) (concurring opinion). But he did not move for judgment under Fed.R.Civ.P. 50 either at the close of the evidence or after the verdict. Instead he accepted the jury's conclusion that the conduct violated the fourth amendment and argued that, even so, he is entitled to qualified immunity from civil liability. With this contention the district court agreed, setting aside the verdict and entering judgment for Coffey. The judge relied principally on *Wilson v. Layne*, 526 U.S. 603, 614–18, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999), one of many cases implementing the holding of *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), that until the constitutional right has been made specific enough that a reasonable officer would be aware of his obligations, immunity offers protection.

Public officials must act in the shadow of legal uncertainty. Unlike private actors, who can retire from the fray while legal debate persists, police must protect the public (and themselves) as best they can while coping with complex bodies of law that not only change but also often leave important subjects unresolved for extended periods. When the law is in flux, or when the only applicable norm is a multi-factor balancing test incapable of predictable application, prospective relief is used in lieu of damages. See *Auriemma v. Rice*, 910 F.2d 1449 (7th Cir.1990) (en banc); *Greenberg v. Kmetko*, 840 F.2d 467 (7th Cir.1988) (en banc).

For many years the analysis of excessive-force claims was beset by legal uncertainty. Some courts analyzed these claims under the fourth amendment, some under the fifth (and, if under the fifth, some for "conscience-shocking" conduct, a standard very hard to pin down in practice). Some courts used a subjective approach, others an objective one. Uncertainty about the legal standard ended, however, with the Supreme Court's opinion in *Graham*, which adopts an objective approach under the fourth amendment. There may still be uncertainty in the application of that standard to particular situations, but this is not the kind of legal uncertainty that *Anderson* and *Wilson* discuss. It is enough that the rule of law be specific in its relation to the facts—and *Graham* makes the norm as clear as the judiciary can achieve, more specific than rules of tort law under which juries regularly award large damages against surgeons and auto manufacturers.

■ Still, Coffey insists, he is entitled to immunity unless a reasonable officer in his position would have known that the *Graham* standard labeled his conduct excessive. Six courts of appeals agree with this proposition. *Napier v. Windham*, 187 F.3d 177, 188 (1st Cir.1999); *Finnegan v. Fountain*, 915 F.2d 817, 822–23 (2d Cir. 1990); *Slattery v. Rizzo*, 939 F.2d 213, 215–16 (4th Cir.1991); *Brown v. Glossip*, 878 F.2d 871, 873–74 (5th Cir.1989); *Landrum v. Moats*, 576 F.2d 1320, 1327–28 (8th Cir.1978); *Gold v. Miami*, 121 F.3d 1442, 1446 (11th Cir.1997). We are not among these courts, however. See *Frazell v.*

*Flanigan*, 102 F.3d 877 (7th Cir.1996); *Titran v. Ackman*, 893 F.2d 145 (7th Cir. 1990). *Frazell* holds that "once a jury has determined under the Fourth Amendment that the officer's conduct was objectively unreasonable, that conclusion necessarily resolves for immunity purposes whether a reasonable officer could have believed that his conduct was lawful." 102 F.3d at 886–87. This conclusion has the support of at least four other circuits. *Holt v. Artis*, 843 F.2d 242, 246 (6th Cir.1988); *Katz v. United States*, 194 F.3d 962 (9th Cir.1999), cert. granted under the name *Saucier v. Katz*, —— U.S. ——, 121 S.Ct. 480, —— L.Ed.2d —— (2000); *Street v. Parham*, 929 F.2d 537, 540, 541 n. 2 (10th Cir.1991); *Scott v. District of Columbia*, 101 F.3d 748, 759 (D.C.Cir.1996). The Supreme Court may resolve this conflict in *Saucier*; unless superseded by higher authority, however, the position articulated in *Frazell* prevails in this circuit.

This is not to say that qualified immunity is inconceivable in an excessive-force case. See *Ellis v. Wynalda*, 999 F.2d 243, 246 n. 2 (7th Cir.1993). Judges rather than juries resolve immunity defenses, and a judge might conclude before trial—indeed, before discovery, see *Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)—that the circumstances would not have alerted a reasonable officer that his acts could be deemed an application of excessive force. Moreover, whenever the legal status of a course of conduct is uncertain, damages are inappropriate. Thus if officer Coffey had argued that fright and dismay (= assault), as opposed to unjustified physical contact (= battery), cannot support an excessive force claim, and if the answer to that contention were legally uncertain, then immunity would be available. That's the upshot of *Wilson* and *Layne*, where legal uncertainty about the *meaning* of the fourth amendment prevailed when the officers acted. But, as we have said, officer Coffey did not make such an argument in the district court and does not advance it now. He takes all legal principles as settled and

argues that he is immune from damages liability nonetheless. That seems to us unsound, and not just because *Frazell* precludes it.

To say that a public official is not exposed to damages even when all legal issues were authoritatively resolved before the conduct occurred would be to make a substantial change in the scope of liability under 42 U.S.C. § 1983. Cf. *Johnson v. Jones*, 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) (emphasizing the link between immunity and legal uncertainty). Officer Coffey's argument for immunity in factually (as opposed to legally) close cases is fundamentally a request to increase the plaintiff's burden of proof—to insist that the plaintiff show a violation not by a preponderance of the evidence (where the plaintiff can win a close case) but by clear and convincing evidence (where all close cases go to the defendant), perhaps even proof beyond a reasonable doubt. Only then, the argument goes, can we be *sure* that the public official should have recognized the culpability of his conduct. Yet a § 1983 case is not a criminal prosecution, and the preponderance standard applies to civil claims of all sorts. See *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). It should not be changed covertly, through an immunity defense that imposes a heightened standard of proof. Cf. *Crawford–El v. Britton*, 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998); *Leatherman v. Tarrant County*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). Moreover, the formula for immunity officer Coffey seeks to use—whether a reasonable person would have *realized* that his conduct violates established legal standards—reintroduces the element of subjectivity that *Graham* deliberately removed. An immunity defense along these lines would be equivalent to saying that a plaintiff cannot prevail without establishing *both* objective and subjective unreasonableness. Undermin-

ing the holding of *Graham* in this fashion has little to recommend it.

Let us never forget that immunity in § 1983 cases is a judicial invention. Congress provided for liability in absolute terms. Public officials who violate the Constitution or laws must pay; immunity is anti-textual. The justification for immunity is that the scope of liability has grown like topsy since 1871, when § 1983 was enacted, and that to carry out what Congress must have meant a court may depart from what Congress said. That's a treacherous path for any judge to take, though history may provide a map. The Supreme Court has justified immunity doctrines as approximating the scope of public-official liability that prevailed when § 1983 was enacted. See *Richardson v. McKnight*, 521 U.S. 399, 402–07, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997); *Wyatt v. Cole*, 504 U.S. 158, 164, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992). Fair enough in many parts of the law, but not when dealing with the fourth amendment. Until this century police faced absolute liability (in trespass or battery) for their acts; probable cause and reasonableness were defenses, and immunity (on top of these defenses) was unheard of. A principal function of the fourth amendment was to protect private parties from overreaching by the police by limiting the availability of advance judicial approval (that is, of a warrant) as a defense, to ensure that citizens could recover unless arresting or searching officers could establish the reasonableness of their conduct. See Telford Taylor, *Two Studies in Constitutional Interpretation* 24–47 (1969); Akhil Reed Amar, *The Constitution and Criminal Procedure: First Principles* 3–17, 40–43 (1997). All the great early opinions defining the scope of freedom from official intrusion resolve damages claims, without a hint that if the officers behaved unreasonably they might still be immune from liability. Thus a general doctrine of official immunity, independent of legal uncertainty, is not only anti-textual but also anti-historical in fourth amendment cases. Perhaps the ju-

diciary would do well to rely more on damages liability and less on the exclusionary rule to enforce the fourth amendment—for damages go to all victims of improper official conduct, while exclusion benefits only the guilty and offers no solace to persons such as the McNairs. We are reluctant to follow an approach that further weakens damages as a deterrent and leads to greater reliance on the exclusionary rule.

The judgment is reversed, and the case is remanded with instructions to enter judgment on the jury's verdict.