Connie Anne SHAW, Plaintiff-Appellant,

v.

Greg LEATHERBERRY, Roger L. Finch and Amy
Elve, Defendants-Respondents.

Supreme Court

*No. 2003AP2316. Oral argument October 7, 2005.
—Decided December 6, 2005.*

2005 WI 163

(Also reported in 706 N.W.2d 299.)

For the plaintiff-appellant there were briefs (in the court of appeals) by *A. Steven Porter* and *Porter, Jablonski & Associates, S.C.,* Madison, and oral argument by *A. Steven Porter.*

For the defendants-respondents there were briefs by *John M. Moore, Sheila M. Sullivan* and *Bell, Gierhart & Moore, S.C.,* Madison, and oral argument by *Sheila M. Sullivan.*

An amicus curiae brief was filed by *Mark J. Steichen* and *Boardman, Suhr, Curry & Field, LLP,* Madison, on behalf of the Civil Trial Counsel of Wisconsin.

An amicus curiae brief was filed (in the court of appeals) by *Jeff Scott Olson* and the *Jeff Scott Olson Law Firm, S.C.,* Madison, on behalf of the Wisconsin Academy of Trial Lawyers and the Wisconsin Employment Lawyers Association, and there was oral argument by *Jeff Scott Olson.*

An amicus curiae brief was filed (in the court of appeals) by *G. Michael Halfenger* and *Foley & Lardner LLP,* Milwaukee, and *Laurence J. Dupuis,* Milwaukee, on behalf of the American Civil Liberties Union of Wisconsin Foundation, Inc., and there was oral argument by *G. Michael Halfenger.*

¶ 1.   JON P. WILCOX, J.   This case comes to us on certification from the court of appeals. The appellant, Connie Anne Shaw (Shaw), appealed an order of the Circuit Court for Dane County, Gerald C. Nichol, Judge, denying Shaw's motion for a new trial, and from the

382

court's decision at trial imposing the middle burden of proof—clear and convincing evidence—on the liability questions put to the jury in the special verdict.

I

¶ 2. The court of appeals certified the following question: What standard of proof applies to cases alleging excessive use of force by the police brought pursuant to 42 U.S.C. § 1983 (1994 & Supp. III 1998)[1] in Wisconsin courts?

¶ 3. We conclude that the Supremacy Clause of the United States Constitution[2] requires Wisconsin courts to apply the lowest burden of proof—preponderance of the evidence—in civil rights actions under 42 U.S.C. § 1983, alleging excessive use of force

---

[1] Section 1983 of Title 42 of the United States Code states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983 (1994 & Supp. III 1998).

[2] "This Constitution, and the laws of the United States which shall be made in pursuance thereof; . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the constitution or laws of any state to the contrary notwithstanding." U.S. Const. art VI, cl.2.

383

by police personnel. As such, we reverse the order of the circuit court, and remand for a new trial on the issue of liability.

## II

¶ 4.　In the early morning hours of January 17, 1998, Shaw was the victim of a hit-and-run accident on the Capitol Square in Madison. As Shaw exited her vehicle to survey the damage, the other vehicle drove away. Shaw pursued the car around the Square to the 600 block of West Washington Avenue, whereupon a female driver and two other female passengers exited their vehicle. Shaw also left her car, and before she could say anything, the other driver punched her in the face. A fight ensued, and eventually Shaw's attackers got back into their vehicle and sped away.

¶ 5.　Shaw chased the other vehicle back around the Square and down East Washington Avenue at speeds of up to 80 miles per hour. Shaw stated that she had hoped to spot a police officer along the way for help. Eventually, they ended up in a commercial business parking lot. Although she thought she could go to jail for her actions, she chased the occupants of the vehicle around the lot and rammed the other vehicle with her car. The police later arrived at the scene, and Shaw was arrested by Officer Carrie Hemming. Shaw was then taken to the Dane County Jail to be booked on charges of criminal damage to property and reckless endangerment of safety.

¶ 6.　Deputy Sheriff Greg Leatherberry (Leatherberry) was the booking deputy on duty that night. Leatherberry testified that Shaw was cooperative and quiet at times, while at other times she was angry, loud, and noncompliant. As part of the booking process,

384

Leatherberry asked Shaw some standard medical questions. Shaw told Leatherberry that she had post-traumatic stress disorder. Furthermore, Leatherberry testified that when he asked Shaw if she was contemplating suicide, she did not immediately answer him. When he asked a second time, Shaw exclaimed: "You're God damn right I am!" Leatherberry then asked the normal follow-up question of if she had ever thought about how she would try to commit suicide. Shaw started to say something about how a person could "stuff," but she never completed the answer. This triggered Leatherberry's recollection of an incident in the prison where a person had committed suicide by stuffing a sock in his mouth. Based on everything Shaw told him, Leatherberry made the decision to strip Shaw of her clothing.

¶ 7.   Leatherberry handcuffed Shaw and escorted her to a segregation cell in the female housing area. Deputy Roger Finch (Finch) was waiting at the holding cell when Leatherberry and Shaw arrived. Because Shaw was female, Deputy Amy Elve (Elve) was summoned to assist. When asked to remove her clothing voluntarily, Shaw refused, and Leatherberry told her that the deputies would be forced to remove her clothing. Shaw denies ever being given the opportunity to voluntarily remove her clothing in the sole presence of Elve.

¶ 8.   Shaw testified that Leatherberry threw her across a cement block bunk, where she struck a cement block wall and fell face-first on the bunk. She also testified that Leatherberry put his knee in the back of her neck and jerked her handcuffed hands up so that her arms were perpendicular to her body. The deputies proceeded to remove her clothes, and Shaw stated that Finch, who was holding the door of the cell open, stood

385

in the doorway grinning at her. After her clothing had been removed, Shaw was given a jail smock to wear. Shaw testified that Leatherberry's actions caused her great pain and emotional distress, and Finch and Elve did not attempt to intervene to prevent Leatherberry from using excessive force, though they had the opportunity to do so.

¶ 9. The deputies, on the other hand, testified that Shaw's head never hit the wall, Leatherberry never put his knee on her, and no one pulled her handcuffed arms up. Leatherberry testified that he used the necessary force to remove her clothing given Shaw's physical resistance.

¶ 10. Shaw filed an action in Dane County Circuit Court on November 4, 1998, which alleged four claims for relief: (1) that the deputies subjected her to an illegal strip search under Wis. Stat. § 968.255 (1997–98); (2) that the deputies tortiously assaulted and battered her; (3) that the deputies deprived her of her rights to be free from an illegal strip search and subjection to excessive force as guaranteed by the Fourteenth Amendment of the United States Constitution and made actionable pursuant to 42 U.S.C. § 1983; and (4) that Dane County and the Sheriff of Dane County negligently trained the deputies.[3] In regard to her § 1983 claim, Shaw claimed deprivations of her constitutional rights by Leatherberry's alleged use of excessive force and by Elve and Finch's failure to intervene on her behalf while Leatherberry mistreated her.

¶ 11. On October 23, 2000, the defendants moved for summary judgment. In an order dated February 13, 2001, the court granted summary judgment and dis-

---

[3] The negligence claim was voluntarily abandoned by Shaw.

missed each of Shaw's claims except for her claim that she was subjected to excessive force under 42 U.S.C. § 1983.

¶ 12.  On May 9, 2002, the deputies moved for summary dismissal of the complaint as they had not been personally identified or served. At the hearing on the motion to dismiss, Shaw's counsel failed to appear, and the circuit court granted the motion. Shaw moved to reopen and to amend her complaint to include the names of the individual deputies—Leatherberry, Finch, and Elve. On May 22, 2002, the court vacated the dismissal and granted Shaw leave to amend her complaint.

¶ 13.  The jury trial was held from May 19 to May 22, 2003. The circuit court utilized an amended version of Wisconsin Jury Instruction-Civil 2155 entitled "Excessive Force in Maintaining Jail Security Federal Civil Rights: § 1983 Action" as agreed upon by the parties, except with respect to the appropriate burden of proof on the issue of liability. Over Shaw's objection, the court used the middle burden of proof contained in Wisconsin Jury Instruction-Civil 205 for the liability questions in the special verdict.[4] On the question of damages, the jury was instructed on the lower burden of proof. Shaw argued that the jury should have been instructed on the lower burden of proof for each question in the special verdict. The court was sympathetic to Shaw's position, but it felt obligated to follow the law in Wisconsin as

---

[4] For each individual deputy, the special verdict first asked the jury if Deputy Leatherberry used excessive and unnecessary force against Shaw or if Deputies Finch and Elve failed to act in violation of Shaw's right not to be subjected to excessive or unreasonable force. Only if the jury answered in the affirmative did it reach the second question of whether the individual deputy's conduct caused harm to Shaw.

387

articulated in cases such as *Johnson v. Ray,* 99 Wis. 2d 777, 299 N.W.2d 849 (1981) and *Wirsing v. Krzeminski,* 61 Wis. 2d 513, 213 N.W.2d 37 (1973), which stated that in civil claims alleged against police officers for excessive force, the proper standard is the middle burden of proof.

¶ 14.   At one point, the jury reported to the judge that it was "at a block" on the question relating to Leatherberry's liability. However, after nearly five hours of deliberation in total, the jury later returned a verdict of 11–1 in favor of Leatherberry and Elve on the issue of liability, and 10–2 in favor of Finch on the issue of liability.[5] In regard to damages, the jury voted 11–1 that Shaw should receive no money for past medical expenses; pain, suffering and disability; or future medical expenses. However, the jury was unanimous in its decision to award Shaw $5000 in damages for mental pain and emotional distress.

¶ 15.   Shaw filed a motion for a new trial claiming, in part, that the circuit court erred by instructing the jury that she had to establish liability under the middle burden of proof. In an order filed on July 17, 2003, the circuit court denied Shaw's motion for a new trial. The court stated that under Wisconsin law, the middle burden of proof is used in excessive force cases involving police officers. It also noted that the burden of proof is appropriately higher for police officers in assault cases because they are privileged to use force under some circumstances.

---

[5] Because the jury found in favor of each defendant on the question of excessive force or failure to intervene, it did not answer the question of causation for any of the defendants.

¶ 16.  Preliminarily, we note that jurisdiction of § 1983 actions does not rest exclusively in federal courts. *See Maine v. Thiboutot,* 448 U.S. 1, 3 n.1 (1980) ("Any doubt that state courts may also entertain such actions was dispelled by *Martinez v. California,* 444 U.S. 277, 283–84, n.7 (1980)."). Prior to this conclusive statement of the United States Supreme Court, this court had held that Wisconsin state courts have jurisdiction to decide actions based upon § 1983. *Terry v. Kolski,* 78 Wis. 2d 475, 479, 254 N.W.2d 704 (1977). Indeed, "there are no longer any state court systems that refuse to hear § 1983 cases[,]" and "[s]tate courts have emerged in recent years as the forum of choice for an increasing number of plaintiffs suing state and local defendants under . . . § 1983." Steven H. Steinglass, *Section 1983 Litigation in State Courts* § 1:1, at 1–1, 1–4 (2002).

¶ 17.  The issue of what burden of proof is appropriate in a § 1983 action alleging excessive force in state court is a matter of first impression before this court. "Determination of the appropriate burden of proof in this case presents a question of statutory interpretation, a question of law which this court determines independently of other courts, benefiting from their analyses." *Carlson & Erickson Builders, Inc. v. Lampert Yards, Inc.,* 190 Wis. 2d 650, 658, 529 N.W.2d 905 (1995). "Statutory interpretation is a question of law that we review de novo." *State v. Stenklyft,* 2005 WI 71, ¶ 7, 281 Wis. 2d 484, 697 N.W.2d 769 (citing *Columbus Park Hous. Corp. v. City of Kenosha,* 2003 WI 143, ¶ 9, 267 Wis. 2d 59, 671 N.W.2d 633).

¶ 18.   Shaw contends that the circuit court erroneously instructed the jury that she had to establish liability under the middle burden of proof—clear and convincing evidence—as detailed in Wisconsin Jury Instruction—Civil 205. Shaw further asserts that the lower burden of proof—preponderance of the evidence —contained in Wisconsin Jury Instruction—Civil 200 was the proper burden of proof in a § 1983 state court action alleging excessive force by the police. The deputies, on the other hand, argue that the circuit court utilized the proper burden of proof as established under this court's prior case law. We agree with Shaw that the preponderance of the evidence standard should have been used, and we remand on the issue of liability. We do not remand on the issue of damages, as the jury properly considered damages under the lower burden of proof.

¶ 19.   The circuit court relied on Wisconsin Jury Instruction—Civil 2155 in concluding that the middle burden of proof was required in this case on the issue of liability. Specifically, the Comment to this jury instruction suggests that in cases alleging excessive force under § 1983, the middle burden of proof is appropriate on the special verdict questions of whether excessive force was used and whether such force caused injury to the plaintiff.[6] *See* Wis JI—Civil 2155 (citing *Johnson,* 99 Wis. 2d 777; *Wirsing,* 61 Wis. 2d 513).

¶ 20.   The decisions relied upon by the circuit court involved civil tort actions alleging assault and

---

[6] On the question of whether the defendants were acting under color of state law, the Comment states that the lower burden of proof is appropriate. *See* Wis JI—Civil 2155.

battery by the police. *Johnson,* 99 Wis. 2d at 781; *Wirsing,* 61 Wis. 2d at 519. Although the appropriate burden of proof was not the central issue in these decisions, this court observed that in tort actions alleging excessive force of a police officer, the plaintiff must satisfy the jury "by a clear and satisfactory preponderance of the evidence." *Johnson,* 99 Wis. 2d at 783 (citing *Wirsing,* 61 Wis. 2d at 520).

¶ 21. The heightened burden of proof would have been appropriate if this case arose under state tort law. However, Shaw's claim that the deputies tortiously assaulted and battered her was dismissed on summary judgment. The sole cause of action tried was Shaw's claim under § 1983 that the deputies' actions deprived her of her federal constitutional rights. As such, the proper focus of the analysis is determining the burden of proof under *§ 1983* and not the burden of proof under *state tort law.*

¶ 22. To be sure, there is no explicit burden of proof contained within the text of § 1983. In such a case "[w]here Congress has not prescribed the appropriate standard of proof and the Constitution does not dictate a particular standard, [the Supreme Court] must prescribe one." *Herman & MacLean v. Huddleston,* 459 U.S. 375, 389 (1983).

¶ 23. The deputies argue that there is no controlling federal authority establishing the burden of proof to be used for § 1983 claims alleging excessive use of force. However, there is clear authority that federal courts consistently require plaintiffs to prove their § 1983 claims under the lower burden of proof—a preponderance of the evidence. *See, e.g., Crawford-El v. Britton,* 523 U.S. 574, 594 (1998).

¶ 24. As a general matter, the Supreme Court has recognized that "[i]n a typical civil suit for money

damages, plaintiffs must prove their case by a preponderance of the evidence." *Huddleston,* 459 U.S. at 387. The burden of proof "serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision." *Addington v. Tex.,* 441 U.S. 418, 423 (1979). Specifically, the "preponderance-of-the-evidence standard allows both parties to 'share the risk of error in roughly equal fashion.'" *Huddleston,* 459 U.S. at 390 (quoting *Addington,* 441 U.S. at 423).

¶ 25. The Supreme Court applies a clear and convincing level of proof "where particularly important individual interests or rights are at stake." *Id.* at 389 (citing *Santosky v. Kramer,* 455 U.S. 745 (1982) (proceeding to terminate parental rights); *Addington,* 441 U.S. at 418 (involuntary commitment proceeding); *Woodby v. INS,* 385 U.S. 276, 285–86 (1966) (deportation)). "By contrast, imposition of even severe civil sanctions that do not implicate such interests has been permitted after proof by a preponderance of the evidence." *Id.* at 389–90 (citing *United States v. Regan,* 232 U.S. 37, 48–49 (1914)). The *Huddleston* Court concluded that "[t]he interests of defendants in a securities case do not differ qualitatively from the interests of defendants sued for violations of other federal statutes such as the antitrust statute *or civil rights laws, for which proof by a preponderance of the evidence suffices." Id.* at 390 (emphasis added).

¶ 26. Turning to a § 1983 case, in *Crawford-El,* a "litigious and outspoken" prison inmate serving a life sentence brought suit under § 1983 against a corrections officer alleging that the officer deliberately misdirected boxes containing legal materials and other personal belongings of his when he was transferred among various prisons. *Crawford-El,* 523 U.S. at 578. The

prisoner claimed, in part, that the officer "deliberately misdirected the boxes to punish him for exercising his First Amendment rights and to deter similar conduct in the future." *Id.* The district court dismissed Crawford-El's claims, in part, because "the First Amendment retaliation claim did not allege direct evidence of unconstitutional motive." *Id.* at 581 (internal quotes omitted). The Court of Appeals, District of Columbia Circuit, sitting en banc, reviewed the dismissal of the First Amendment retaliation claim. *Id.* The primary opinion concluded that "unless the plaintiff offers clear and convincing evidence on the state-of-mind issue at summary judgment and trial, judgment or directed verdict (as appropriate) should be granted for the individual defendant." *Id.* at 583.

¶ 27. The United States Supreme Court recognized that the heightened burden of proof in improper motivation cases was the court of appeals' attempt to address the problem of "insubstantial claims" and the concerns the court had "with the social costs of subjecting public officials to discovery and trial, as well as liability for damages." *Id.* at 584–85. Nevertheless, the *Crawford-El* Court concluded that "[n]either the text of § 1983 or any other federal statute, nor the Federal Rules of Civil Procedure, provide any support for imposing the clear and convincing burden of proof on plaintiffs either at the summary judgment stage or in the trial itself." *Id.* at 594. From this determination, the Court rejected the court of appeals' requirement of a higher burden of proof on § 1983 litigants. *Id.* "The unprecedented change made by the Court of Appeals in this case [] lacks any common-law pedigree and alters the cause of action itself in a way that undermines the very purpose of § 1983—to provide a remedy for the violation of federal rights." *Id.* at 594–95.

393

¶ 28. In our view, the Court's decision in *Crawford-El* would not have been any different in an excessive force context. That is, the clear and convincing evidence burden of proof undermines the remedial purpose of § 1983 just as much in an excessive force case as it does in a case such as *Crawford-El*, which concerned the failure to deliver a prison inmate's legal papers.

¶ 29. In excessive force cases arising under § 1983, the Seventh Circuit has tacitly approved the preponderance of the evidence standard. In *McNair v. Coffey,* for example, the Seventh Circuit recognized that "a § 1983 case is not a criminal prosecution, and the preponderance standard applies to civil claims of all sorts." *McNair v. Coffey,* 234 F.3d 352, 355 (7th Cir. 2000), *vacated on other grounds by* 533 U.S. 925 (2001), *overruled on remand McNair v. Coffey,* 279 F.3d 463 (7th Cir. 2002). *See also Stone v. City of Chicago,* 738 F.2d 896, 900–01 (7th Cir. 1984) (analyzing jury instruction that utilized the preponderance of the evidence standard in an excessive force case arising under § 1983).[7] Indeed, even looking beyond the Seventh Circuit, we have found many federal appellate decisions that utilize an ordinary civil burden of proof in § 1983 excessive force cases.[8]

---

[7] The Committee on Federal Civil Jury Instructions for the Seventh Circuit recently drafted a series of proposed pattern jury instructions, including an instruction for excessive force cases under § 1983 alleged by an arrestee or pretrial detainee. The instruction states in part: "In this case, Plaintiff claims that Defendant used excessive force against him. To succeed on this claim, Plaintiff must prove each of the following things by a preponderance of the evidence: . . . ." Fed. Civ. Jury Instructions of the 7th Cir. § 7.08 (2005).

[8] *See, e.g., Davis v. Rennie,* 264 F.3d 86, 105 (1st Cir. 2001); *Kerman v. City of N.Y.,* 261 F.3d 229, 243 n.10 (2d Cir. 2001);

¶ 30.   All told, our review of federal law leads us to the conclusion that if Shaw had brought this cause of action in federal court, the appropriate burden of proof would have been the lower civil burden.

■

¶ 31.   The issue then becomes which burden of proof to apply in a § 1983 cause of action alleging excessive force in state court. The United States Supreme Court has recognized that "[j]ust as federal courts are constitutionally obligated to apply state law to state claims, [citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)] so too the Supremacy Clause imposes on state courts a constitutional duty 'to proceed in such manner that all the substantial rights of the parties under controlling federal law [are] protected.' " *Felder v. Casey*, 487 U.S. 131, 151 (1988) (quoting *Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 245 (1942)). Inasmuch as the burden of proof is substantive, we hold that under the Supremacy Clause, the lower federal burden of proof applies in § 1983 excessive force cases in state court.

¶ 32.   In *Garrett*, the plaintiff, an injured seaman, filed an action for damages in state court under a federal admiralty law. *Garrett*, 317 U.S. at 240. The trial court utilized the higher burden of proof under state law. *Id.* at 242. The Pennsylvania Supreme Court affirmed, determining that although federal law controlled the cause of action, the burden of proof is a procedural and not substantive rule. *Id.* Therefore, the

*Rogala v. Dist. of Columbia*, 161 F.3d 44, 58 (D.C. Cir. 1998); *Tatro v. Kervin*, 41 F.3d 9, 14–15 (1st Cir. 1994); *Zuchel v. City & County of Denver, Colo.*, 997 F.2d 730, 735 (10th Cir. 1993); *Miller v. Taylor*, 877 F.2d 469, 471 n.2 (6th Cir. 1989); *Wing v. Britton*, 748 F.2d 494, 496 (8th Cir. 1984).

court concluded that the burden of proof was controlled by state law. *Id.* The United States Supreme Court reversed. *Id.* at 249.

¶ 33.   The Court first made it clear that federal substantive law applied. "We do not have in this case an effort of the state court to enforce rights claimed to be rooted in state law. The petitioner's suit rested on asserted rights granted by federal law and the state courts so treated it." *Id.* at 243. Thus, because the cause of action arose under federal law "[t]he source of the governing law applied is in the national, not the state, governments." *Id.* at 245. The Court went on to state:

> If by its practice the state court were permitted substantially to alter the rights of either litigant, as those rights were established in federal law, the remedy afforded by the State would not enforce, but would actually deny, federal rights which Congress, by providing alternative remedies, intended to make not less but more secure. The constant objective of legislation and jurisprudence is to assure litigants full protection for all substantive rights intended to be afforded them by the jurisdiction in which the right itself originates. . . . [I]n trying this case the state court was bound to proceed in such manner that all the substantial rights of the parties under controlling federal law would be protected.

*Id.* at 245.

¶ 34.   The Court concluded by determining that, as a general proposition, the burden of proof is a substantive aspect of the cause of action. "The right of the petitioner to be free from the burden of proof imposed by the Pennsylvania local rule inhered in his cause of action. . . . [I]t was a part of the very substance of his claim and cannot be considered a mere incident of a form of procedure." *Id.* at 249. *See also Raleigh v. Ill.*

*Dept. of Revenue,* 530 U.S. 15, 20–21 (2000) ("Given its importance to the outcome of cases, we have long held the burden of proof to be a 'substantive' aspect of a claim.") (citing *Dir., Office of Workers' Comp. Programs v. Greenwich Collieries,* 512 U.S. 267, 271 (1994); *Dick v. N.Y. Life Ins. Co.,* 359 U.S. 437, 446 (1959); and *Garrett,* 317 U.S. at 249). Thus, because the burden of proof is substantive and the cause of action arose under federal law, the Court held that the lower federal burden of proof applied. *Id.*

¶ 35.  This case differs from *Garrett* in two respects. First, the cause of action arises under a federal civil rights statute and not a federal admiralty statute. Second, the state court improperly shifted the burden of proof from the defendant to the plaintiff, as opposed to applying the wrong burden. However, we see no reason why the principles elicited in *Garrett* should not apply with equal vigor to a § 1983 excessive force cause of action in state court where a heightened burden of proof was imposed on the plaintiff. *See Felder,* 487 U.S. at 138 ("[W]here state courts entertain a federally created cause of action, the 'federal right cannot be defeated by the forms of local practice.' ") (quoting *Brown v. Western Ry. of Ala.,* 338 U.S. 294, 296 (1949)).

¶ 36.  Thus, the burden of proof is a substantive aspect of this § 1983 claim. *See Raleigh,* 530 U.S. at 20–21. As such, when the circuit court exercised its concurrent jurisdiction over the federally created cause of action, it was required under the Supremacy Clause to instruct the jury on the lower burden of proof, a clear attribute of a § 1983 cause of action.

¶ 37.  However, even if the burden of proof were not a substantive aspect of the cause of action, federal law would still preempt Wisconsin law in this instance because a higher burden of proof is inconsistent with

§ 1983's purposes of compensation and deterrence. In other words, the higher burden of proof utilized in state tort law causes of action is not "consistent with the goals of the federal civil rights laws, [and] instead ' "stand[s] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." ' " *Felder,* 487 U.S. at 138 (quoting *Perez v. Campbell,* 402 U.S. 637, 649 (1971) (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67 (1941))).

¶ 38.  In *Felder,* the Court held that Wisconsin's notice of claim statute was preempted by federal law in § 1983 actions in state Court. *Id.* at 138. The *Felder* court noted that under the Supremacy Clause, " 'the relative importance to the State of its own law is not material when there is a conflict with a valid federal law,' for 'any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield.' " *Id.* (quoting *Free v. Bland,* 369 U.S. 663, 666 (1962)). With this concept in mind, the Court ultimately held the following:

> Because the notice-of-claim statute at issue here conflicts in both its purpose and effects with the remedial objectives of § 1983, and because its enforcement in such actions will frequently and predictably produce different outcomes in § 1983 litigation based solely on whether the claim is asserted in state or federal court, we conclude that the state law is pre-empted when the § 1983 action is brought in state court.

*Id.* Thus, under the *Felder* analysis we now analyze whether a higher burden of proof in this context impermissibly interferes in its purpose and effects with the remedial objectives of § 1983 or is outcome-determinative.

¶ 39. Section 1983 originated in § 1 of the Civil Rights Act of 1871.[9] *Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 503 (1982). "The 1871 Congress intended § 1 to 'throw open the doors of the United States courts' to individuals who were threatened with, or who had suffered, the deprivation of constitutional rights[.]" *Id.* at 504 (quoting Cong. Globe, 42d Cong., 1st Sess., App. 46 (1871) (remarks of Rep. Lowe)). Indeed, "[t]he very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law, 'whether that action be executive, legislative, or judicial.' " *Mitchum v. Foster*, 407 U.S. 225, 242 (1972) (quoting *Ex parte Virginia*, 100 U.S. 339, 346 (1879)). "Thus, § 1983 provides 'a uniquely federal remedy against incursions . . . upon rights secured by the Constitution and laws of the Nation,' *Mitchum*, 407 U.S. at 239, and is to be accorded 'a sweep as broad as its language.' *United States v. Price*, 383 U.S. 787, 801 (1966)." *Felder*, 487 U.S. at 139.

¶ 40. With this broad sweep, § 1983 seeks to "deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254–57 (1978)). The Supremacy Clause ensures that any state law forms, practices, and procedures that interfere with these purposes of the federal civil rights law are preempted.

---

[9] Act of Apr. 20, 1871, ch.22, § 1, 17 Stat. 13 ("An Act to enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States, and for other Purposes.").

*See Felder,* 487 U.S at 138. The Supreme Court, in turn, closely scrutinizes any policy that undermines the remedial purpose of § 1983. *See Crawford-El,* 523 U.S. at 594–95 (rejecting the imposition of a heightened burden of proof in a § 1983 action by an inmate alleging an interference with the right of access to the courts against a prison official). Indeed, the *Crawford-El* Court recognized that "the heightened standard of proof directly limits the availability of the remedy." *Id.* at 595 n.16. If a federal court is not at liberty to undermine the remedial purposes of § 1983 through a heightened burden of proof, we conclude that the Supremacy Clause preempts our state courts from imposing a higher burden of proof in § 1983 actions.

¶ 41.  Another aspect of the *Felder* Court's preemption analysis concerned whether the state law was outcome-determinative in § 1983 litigation depending on whether the action was brought in state or federal court. *Felder,* 487 U.S. at 138. The Court determined that Wisconsin "may not alter the outcome of federal claims it chooses to entertain in its courts by demanding compliance with outcome-determinative rules that are inapplicable when such claims are brought in federal court." *Felder,* 487 U.S. at 152. In other words, "[a] law that predictably alters the outcome of § 1983 claims depending solely on whether they are brought in state or federal court within the same State is obviously inconsistent with [the] federal interest in intrastate uniformity." *Id.* at 153. *See also, Casteel v. Vaade,* 167 Wis. 2d 1, 13, 481 N.W.2d 277 (1992).

¶ 42.  Although we conclude that a higher burden of proof in state court in this instance may not necessarily affect the outcome of every case, it does disrupt the federal interest in uniformity. Furthermore, allowing different burdens of proof for the same action, based

solely on where the action is brought, would be discriminatory against Wisconsin plaintiffs, and would, in effect, violate the purposes of § 1983.

¶ 43. Thus, even if we set aside the fact that the burden of proof is a substantive aspect of the cause of action, when we consider the purposes and objectives of the federal civil rights law, the application of the higher burden of proof in state court actions in this particular context is inconsistent with § 1983 and is therefore preempted under the Supremacy Clause.

¶ 44. Finally, we must determine the appropriate remedy in this case. This court's decision in *Bengston v. Estes,* is clear:

> In *Carle v. Nelson,* 145 Wis. 593, 130 N.W. 467 (1911), we said that a party upon whom an instruction has cast a greater burden than the law requires can justly complain thereof when the answer is unfavorable to him and an erroneous instruction as to the burden of proof upon a material issue must be deemed to affect the substantial rights of the party. We adhered to this principle in *Heineman v. Old Nat. Bank,* 157 Wis. 289, 147 N.W. 360 (1914), and reaffirm it now.

*Bengston v. Estes,* 260 Wis. 595, 600, 51 N.W.2d 539 (1952). We again follow this principle here. In this case, however, the court properly instructed the jury on the lower burden of proof in determining the amount of damages. Thus, there is no basis for granting the plaintiff a new trial for damages, and we remand solely on the issue of liability.[10]

---

[10] Although Shaw did not object to the jury's damage award in the trial court, she now asks this court to remand on all issues, including damages, in the interests of justice. Because we believe the increased burden of proof on liability did not

401

V

¶ 45.  In sum, we conclude that the Supremacy Clause of the United States Constitution requires Wisconsin courts to apply the lowest burden of proof—preponderance of the evidence—in civil rights actions under 42 U.S.C. § 1983, alleging excessive use of force by police personnel. As such, we reverse the order and judgment of the circuit court, and remand for a new trial on the issue of liability.

*By the Court.*—The circuit court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

---

affect the amount of damages awarded to the plaintiff for her injuries, we do not remand on this issue.