COURT OF APPEALS
DECISION
DATED AND FILED

**May 20, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP247**

Cir. Ct. No. **2022SC25924**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

TERRENCE DEMONE PASCAL,

PLAINTIFF-APPELLANT,

V.

UTC INC.,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Milwaukee County: REYNA I. MORALES, Judge. *Affirmed*.

¶1 DONALD, P.J.[1] Terrence Demone Pascal, pro se, appeals from the circuit court's order dismissing his complaint against UTC Inc., in which he

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

alleged that UTC failed to return his entire security deposit after he vacated his apartment. Pascal argues that he was denied due process and challenges the sufficiency of the evidence supporting the court's findings. For the following reasons, we affirm.

## BACKGROUND

¶2     This case involves a landlord-tenant dispute over the amount of money in the security deposit UTC was obligated to return to Pascal. In 2020, Pascal leased an apartment from UTC and paid $750 as the security deposit. The lease provided that the security deposit would be returned to Pascal when he vacated the apartment minus "[t]he reasonable cost for tenant damage, waste, or neglect of the premises, normal wear and tear excluded[.]" The lease also included a separate form containing "Nonstandard Rental Provisions" which similarly provided that "[i]f there is any damage, waste or neglect to the Premises, Tenant will be responsible for all costs incurred by Landlord to remedy the damage, waste or neglect …. These fees and costs may be deducted from Tenant's security deposit."

¶3     In July 2020, Pascal contacted the owner of UTC, George Owusu, via text message and informed him that his glass oven door was broken.[2] Pascal sent pictures of the shattered door and maintained that he was not responsible for the damage because the glass just "fell out." Owusu responded that the glass did

---

[2] We note that we are limited to the characterization of the content of some of the text messages at trial because the initial text messages regarding Pascal's and Owusu's exchange over the oven door are not in the record on appeal. *See Fiumefreddo v. McLean*, 174 Wis. 2d 10, 26-27, 496 N.W.2d 226 (Ct. App. 1993) ("We are bound by the record as it comes to us …. Additionally, when an appellate record is incomplete in connection with an issue raised by the appellant, we must assume that the missing material supports the trial court's ruling.").

not just break and sent a maintenance worker over to evaluate the damage. After examining the oven door, the maintenance worker informed Owusu that the oven door did not break by itself and was likely hit with a blunt object due to how it was shattered. UTC subsequently determined that the door could not be affordably fixed and replaced the oven with a used one costing $449.

¶4 After Pascal vacated the apartment, UTC returned Pascal's security deposit in the form of a check for $301, and a Security Deposit Transmittal explaining that $449 was deducted from the total amount to cover the cost of replacing the oven. Pascal, acting pro se, then filed suit alleging that UTC failed to return his entire security deposit.

¶5 A court trial was held on November 30, 2023. Pascal argued that it was improper for UTC to deduct the cost of the replacement oven from his security deposit because he was not responsible for the damage to the oven door. UTC argued that the doctrine of *res ipsa locquitur* applied because Pascal was in exclusive control of the oven and the oven door breaking in the way it did was not the type of accident that would ordinarily occur in the absence of negligence.

¶6 Shortly into the trial, Pascal informed the circuit court that he had never received any of UTC's exhibits. After a brief discussion, the court confirmed with Pascal that he was aware of the information in UTC's exhibits because they were pictures that Pascal took himself and used as his own exhibits, and he had previously received a copy of his lease with UTC. UTC's counsel also shared a copy of the exhibits with Pascal so Pascal could reference them.

¶7 At trial, Ebony Jones, who lived with Pascal, and Owusu testified. Jones testified that she was in the living room with Pascal while the oven preheated in the kitchen. Jones stated that she heard the sound of glass shattering,

got up to investigate, and found the oven door half open with glass on the ground. Owusu then testified that the oven was two-to-three years old, was inspected just prior to Pascal's tenancy and worked without issue, and that he was unaware of any defects. Owusu also testified that a couple months prior to the door breaking, Pascal had requested the oven to be rebalanced which was taken care of by a maintenance worker. Ultimately, the circuit court ruled in favor of UTC, finding that Pascal did not provide sufficient evidence to demonstrate that the oven door could have spontaneously broken.

¶8     Pascal appeals.

## DISCUSSION

¶9     On appeal, Pascal argues that his due process rights were violated because he did not receive a copy of UTC's exhibits prior to the trial, and challenges the sufficiency of the evidence supporting the circuit court's findings.

¶10     Pascal's due process argument consists of two paragraphs of conclusory statements and a citation to *Mathews v. Eldridge*, 424 U.S. 319 (1976). Pascal states that "[t]he court's reliance on evidence that Pascal had no opportunity to review or contest violates the principles established in *Eldridge* and undermines the integrity of the judicial process." However, Pascal does not explain how his due process rights were violated given that he had an opportunity to review and contest all of the exhibits at the court trial and indicated that he was familiar with the content of UTC's exhibits. Furthermore, Pascal never objected to continuing the trial after reviewing UTC's exhibits. *See State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727 ("It is a fundamental principle of appellate review that issues must be preserved at the circuit court. Issues that are

not preserved at the circuit court, even alleged constitutional errors, generally will not be considered on appeal.").

¶11 "Constitutional claims are very complicated from an analytic perspective, both to brief and to decide. A one or two paragraph statement that raises the specter of such claims is insufficient to constitute a valid appeal of these constitutional issues to this court." *Wisconsin Conf. Bd. of Trs. of United Methodist Church, Inc. v. Culver*, 2001 WI 55, ¶38, 243 Wis. 2d 394, 627 N.W.2d 469 (citation omitted). "We cannot serve as both advocate and court" by developing a party's arguments. *Id.* Therefore, we decline to address Pascal's undeveloped due process argument further.

¶12 Pascal also challenges the sufficiency of the evidence by arguing that the circuit court misinterpreted the evidence before it.[3] Pascal maintains that he had proven that he was not responsible for the damage to the oven and the court erred by finding otherwise.

¶13 We will not disturb the circuit court's factual findings unless they are clearly erroneous. WIS. STAT. § 805.17(2). "[A] finding of fact is clearly erroneous when 'it is against the great weight and clear preponderance of the evidence.'" *Phelps v. Physicians Ins. Co. of Wis.*, 2009 WI 74, ¶39, 319 Wis. 2d

---

[3] Additionally, Pascal argues that the circuit court improperly placed the burden of proof on himself contrary to the "standard allocation of burden of proof[.]" However, in doing so Pascal argues that the burden of proof should be placed on the plaintiff such that the "plaintiff must prove his case by a preponderance of the evidence[.]" Pascal is the plaintiff in this case, thus Pascal's argument regarding how the circuit court erred is unclear and we do not address it further. *See Shaw v. Leatherberry*, 2005 WI 163, ¶24, 286 Wis. 2d 380, 706 N.W.2d 299 ("In a typical civil suit for money damages, plaintiffs must prove their case by a preponderance of the evidence." (Citation and brackets omitted.)); *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("We may decline to review issues inadequately briefed.").

1, 768 N.W.2d 615 (citation omitted). Furthermore, "[t]he trial court is the arbiter of the credibility of witnesses, and its findings will not be overturned on appeal unless they are inherently or patently incredible or in conflict with the uniform course of nature or with fully established or conceded facts." *Global Steel Prods. Corp. v. Ecklund*, 2002 WI App 91, ¶10, 253 Wis. 2d 588, 644 N.W.2d 269. "We will search the record for evidence to support the findings that the trial court made, not for findings that the trial court could have made but did not." *Id.*

¶14 Upon review of the record, we conclude the circuit court's findings are not clearly erroneous. Owusu testified that he had inspected the oven prior to Pascal moving into the apartment and did not notice any issues at that time. He also stated that he was unaware of any defects with the oven and that it was only two-to-three years old. Furthermore, Owusu discussed how in his opinion, and the opinion of the maintenance worker who inspected the broken oven door, the damage was caused by the door being hit with a blunt object. We cannot say that the court's finding that the oven did not spontaneously break was against the great weight and clear preponderance of the evidence simply because there was some other evidence—Jones' testimony—that might have supported a contrary finding. *See Phelps*, 319 Wis. 2d 1, ¶39.[4]

¶15 Pascal further argues that the circuit court failed to properly consider the timeline of events as demonstrated by the dates in the text messages he

---

[4] Pascal also argues that UTC improperly withheld his security deposit contrary to WIS. STAT. § 704.28(3) because he had proven that he did not cause any damage to the oven door. Pascal's argument is contingent on a conclusion that the circuit court's findings are clearly erroneous; therefore, given that we are upholding the court's findings, we do not discuss this argument further. *State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground[.]").

submitted to the court. The record suggests otherwise. Pascal argued at trial that the time between when he first contacted Owusu about the oven and when the maintenance worker was sent out was relevant to Owusu's credibility. Although the court initially indicated that it was unclear about the origin of the dates Pascal was discussing, the court subsequently allowed Pascal to clarify. There is no indication in the record that the court failed to consider the text messages or Pascal's argument. To the extent Pascal argues that we should weigh the evidence differently, we decline to do so. *See **Johnson v. Merta***, 95 Wis. 2d 141, 151, 289 N.W.2d 813 (1980) (explaining that "it is not [this court's] function to review questions as to weight of testimony and credibility of witnesses").

## CONCLUSION

¶16 Upon review, we conclude that the circuit court's findings regarding whether Pascal was responsible for the damage to the oven door were not clearly erroneous. Accordingly we affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.