GLOBAL STEEL PRODUCTS CORP. and Accurate Partitions Corp., Plaintiffs-Respondents,

v.

ECKLUND CARRIERS, INC., Defendant-Appellant,

QUADGRAPHICS INC., Garnishee-Defendant.

Court of Appeals

*No. 01–1151. Submitted on briefs February 7, 2002.—Decided March 6, 2002.*

2002 WI App 91

(Also reported in 644 N.W.2d 269.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Charles J. Hertel* of *Dempsey, Magnusen, Williamson & Lampe, LLP* of Oshkosh.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Paul W. Rosenfeldt* of *Edgarton, St. Peter, Petak, Massey & Bullow* of Fond du Lac.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

¶ 1. NETTESHEIM, P.J.   Ecklund Carriers, Inc., appeals from a partial summary judgment awarding Global Steel Products Corp. and Accurate Partitions Corp. replevin of property and from a later judgment awarding damages in the amount of the diminution in value of the replevied property while it was in storage with Ecklund. On appeal, Ecklund argues that there is

insufficient evidence to sustain the trial court's finding that the property had diminished in value by $34,070.83 and that the award of damages in addition to replevin constitutes an improper windfall to Global. We reject each of Ecklund's challenges and affirm the judgment.

¶ 2. We additionally reject Global's motion for costs, fees and reasonable attorney fees pursuant to WIS. STAT. RULE 809.25(3) (1999–2000).[1] Given the dearth of current replevin law as it relates to damages, we cannot conclude that Ecklund's appeal is frivolous.

## BACKGROUND

¶ 3. The facts underlying Ecklund's appeal are largely undisputed. Global and Accurate Partitions are affiliated manufacturers and distributors of public restroom partitions. Ecklund is an over-the-road common carrier doing business throughout North America.

¶ 4. On or about June 4, 1996, Global engaged M.J. Meyers, Inc., for the transport of a load of restroom stall components and hardware from its plant in New York to Accurate's plant in Illinois. Meyers sent a trailer to Global's plant, loaded the materials and then made arrangements with Ecklund to haul the materials to Illinois. Meyers submitted an invoice to Global for its services. However, Ecklund did not deliver Global's materials to Accurate. Instead, Ecklund informed Global that it would not be delivering the materials because Meyers had ceased operations and had not paid Ecklund for previous transport services and for the transport services related to this case.

---

[1] All statutory references are to the 1999–2000 version unless otherwise indicated.

¶ 5. More than three years later, on November 8, 1999, Global commenced this action against Ecklund for replevin.[2] Ecklund denied the allegations of the complaint and counterclaimed, asserting that Meyers was acting as an agent for Global and, as such, Global was obligated to pay Ecklund for the transport services.

¶ 6. On July 7, 2000, Global moved for partial summary judgment on its replevin claim. Following a hearing on July 31, 2000, the trial court granted Global's motion on August 9, 2000, finding that "there is no genuine, material dispute with respect to the facts alleged by [Global]." The judgment awarded Global "replevin of the property which is the subject of this action; that in lieu of replevin the plaintiffs shall recover . . . the value of the property, $39,903.33." The judgment additionally provided for lost profits, dismissed Ecklund's counterclaim and awarded Global costs and fees incurred in bringing the action.

¶ 7. On February 14, 2001, the trial court conducted further proceedings in the form of a bench trial as to the diminution in value of Global's materials from the date the property was delivered to Ecklund in June 1996 through the grant of partial summary judgment.[3]

---

[2] Global's complaint also made claims on grounds of conversion of property, property damage, lost profits, breach of contract and intentional interference with performance of contract. Those claims are not at issue on appeal.

[3] Neither the appellate record nor the parties' briefs explain who requested this further hearing or why it was requested. Regardless, the record does not reveal that Ecklund objected to the hearing. Nor does Ecklund raise the propriety of the hearing as an issue on appeal. Instead, Ecklund quarrels with the sufficiency of the evidence adduced at the hearing and the propriety of the damage award in light of the trial court's prior award of replevin to Global.

Global presented the testimony of Carl Liggett, the general manager of Accurate, as to the current value of the materials. Liggett testified that he had inspected the materials stored on Ecklund's property and had observed rusting on a number of panels. Liggett testified that based on the "extreme rust" and "evidence of moisture," "a reasonable person would not want to take these products and run the risk of selling them to their customers." Liggett concluded that the products could be used only as scrap metal for a residual value of 2.7 cents per pound. As to the hardware, Liggett concluded that it had not deteriorated during storage but was obsolete as the designs of the partitions had changed so as to use different hardware. Liggett expected to be able to recoup 25–30% of its original value of $19,000.

¶ 8. Ecklund presented two witnesses at trial, Robert Schumacher and Keary Ecklund. Both testified as to the physical condition of the products. Schumacher testified that he observed very little rust on the panels and stated his opinion that any rust could be easily removed. Keary Ecklund testified that the products had been stored in a climate-controlled facility during the four and one-half years since Ecklund took possession and that he had observed similar rusting in previous loads transported for Global.

¶ 9. The trial court found Ligget's testimony to be "very credible" and "uncontroverted" as to the type of rusting and the compromised integrity of the pieces exposed to moisture. The court additionally accepted Liggett's testimony as to the value of the partitions and hardware. Based on Liggett's testimony, the court arrived at a resale value of $5832.50, stating, "subtracting that from the $39,903.33, the Court would find for [Global] for $34,070.83." Ecklund appeals.

## DISCUSSION

### *Standard of Review*

¶ 10. We will not set aside the trial court's findings of fact unless clearly erroneous. WIS. STAT. § 805.17(2). It is for the trial court, not the appellate court, to resolve conflicts in the testimony. *See Fuller v. Riedel*, 159 Wis. 2d 323, 332, 464 N.W.2d 97 (Ct. App. 1990). It is not within our province to reject an inference drawn by a fact finder when the inference drawn is reasonable. *Onalaska Elec. Heating, Inc. v. Schaller*, 94 Wis. 2d 493, 501, 288 N.W.2d 829 (1980). We will search the record for evidence to support the findings that the trial court made, not for findings that the trial court could have made but did not. *Becker v. Zoschke*, 76 Wis. 2d 336, 347, 251 N.W.2d 431 (1977). The trial court is the arbiter of the credibility of witnesses, and its findings will not be overturned on appeal unless they are inherently or patently incredible or in conflict with the uniform course of nature or with fully established or conceded facts. *Chapman v. State*, 69 Wis. 2d 581, 583, 230 N.W.2d 824 (1975).

¶ 11. Whether the trial court's replevin award coupled with the damage award for diminution in value of the property was proper turns on the language of WIS. STAT. § 810.14. The construction of a statute and its application to undisputed facts are questions of law which we determine de novo. *Smith v. Dodgeville Mut. Ins. Co.*, 212 Wis. 2d 226, 233, 568 N.W.2d 31 (Ct. App. 1997).

## *Sufficiency of Evidence*

¶ 12.   Ecklund first challenges the trial court's finding as to the amount of diminution in value of Global's products. Ecklund argues that the trial court's findings are clearly erroneous when considered against the evidence presented at trial. Ecklund's challenge centers on the trial court's reliance on Liggett's testimony. Ecklund contends that Liggett's testimony as to the physical condition of the property should not have been relied upon and was controverted by its witnesses "who had taken considerable time to examine the condition of the [p]roducts."

¶ 13.   In support of its argument, Ecklund points to Liggett's testimony that the conditions during his inspection were not ideal. Liggett testified that he examined the load with nothing more than a flashlight and the light from outside the trailer. He testified that the products were "jammed together" in the trailer "with no light and very limited access." Ecklund also points to testimony of its witnesses that there was very little rust and that it could be easily removed. However, Liggett's testimony demonstrated that it was moisture, not only rust, that gave cause for concern. Liggett explained that the partitions are constructed by bonding two sheets of galvanized steel to a "honeycomb" craft paper or cardboard core. Liggett felt "certain" that the moisture he observed would have weakened the cardboard core of the partitions and degraded the bond between the steel and the core. The only way to rule out such damage would be to tear the partitions apart, thereby ruining them. Either way, Liggett did not feel it would be responsible to sell questionable merchandise.

¶ 14.   As to his lack of further inspection, Liggett testified that due to the severity of the rust he observed initially, he did not feel the need to explore the products

by removing their packaging and inspecting them further. In Liggett's opinion, the partitions could be sold for scrap metal and the hardware for only 25–30% of its original value.

■

¶ 15.  The trial court found Liggett's testimony to be credible, including his testimony as to the value of the stored products. We have reviewed the record and find ample evidence to support the trial court's findings. Although Ecklund's witnesses offered testimony conflicting with Liggett's, it is the trial court's function, not ours, to resolve such conflicts. *Fuller*, 159 Wis. 2d at 332. The trial court's findings are not clearly erroneous.

*Replevin and Diminution of Value*

¶ 16.  Ecklund next argues that the money judgment awarded to Global is not permitted under WIS. STAT. § 810.14, which governs recovery in a replevin action. The statute provides:

> In any action of replevin judgment for the plaintiff may be for the possession or for the recovery of possession of the property, or the value thereof in case a delivery cannot be had, and of damages for the detention; and when the property shall have been delivered to the defendant, under s. 810.06, judgment may be as aforesaid or absolutely for the value thereof at the plaintiff's option, and damages for the detention. If the property shall have been delivered to the plaintiff under ss. 810.01 to 810.13 and the defendant prevails, judgment for the defendant may be for a return of the property or the value thereof, at the defendant's option, and damages for taking and withholding the same.

■

¶ 17.  Ecklund argues that the plain language of this statute requires that Global take judgment for either the possession of the property or for its value.

However, Ecklund overlooks that the statute also provides for "damages for the detention" whether the plaintiff chooses to pursue replevin or the value of the property if delivery cannot be made. *Id.*

¶ 18.   That Global is entitled to recover damages in addition to replevin of the property is supported by case law. In *Commercial Investment Trust, Inc. v. William Frankfurth Hardware Co.*, 179 Wis. 21, 30, 190 N.W. 1004 (1922), the court held:

> [W]hatever may be the rights of one whose property has been wrongfully attached, a plaintiff in a replevin action, when successful, both at common law and by statute is entitled to damages.
>
> In cases where the property is recovered to the owner, the damages are usually measured by interest and depreciation in value . . . . [W]here the property depreciates in value during the time of the wrongful detention the owner is also entitled to damages for the amount of the depreciation.

¶ 19.   On a variation of this same theme, Ecklund also contends that the trial court erred by later awarding a money judgment to Global for the value of the property after already awarding Global replevin of the property. However, this is not what the trial court did. The trial court awarded Global the diminution in value of the property while it was in the Ecklund's custody and control. This additional remedy is expressly sanctioned by *Commercial Investment Trust. Id.*

¶ 20.   The net result in this case is that Global received its property with a present value of $5225 plus a damage award of $34,070.83, representing the diminution in value of the property during the years of storage with Ecklund. Contrary to Ecklund's argument,

these combined remedies do not constitute a windfall to Global. Rather, they make Global whole, which is precisely what WIS. STAT. § 810.14 and *Commercial Investment Trust* envision.[4]

## *Frivolous Appeal*

¶ 21.   As a final matter, we address Global's motion for costs and fees associated with this appeal pursuant to WIS. STAT. RULE 809.25(3). Global argues that Ecklund filed this appeal for the sole purpose of harassment and that it knew or should have known that the appeal was without any reasonable basis in law or equity. Because of the dated law surrounding Ecklund's appeal as to the propriety of damages in a replevin action, we cannot conclude that the appeal as to this issue is frivolous.

¶ 22.   Even if we agreed with Global that Ecklund's challenge to the sufficiency of the evidence is frivolous, *see Lessor v. Wangelin*, 221 Wis. 2d 659, 667–69, 586 N.W.2d 1 (Ct. App. 1998), we cannot award fees under WIS. STAT. RULE 809.25(3) unless "the entire appeal is frivolous," *see Manor Enters., Inc. v. Vivid, Inc.*, 228 Wis. 2d 382, 403, 596 N.W.2d 828 (Ct. App. 1999).

¶ 23.   Here, both parties acknowledge the lack of recent case law addressing whether a party may recover in both replevin and damages. Global even asks that we publish this opinion "in view of the paucity of modern case law on the remedy of replevin." Without a recent

---

[4] Therefore, we reject Ecklund's further argument that Global was required to elect as between these remedies.

case revisiting such dated law, we cannot conclude that Ecklund's appeal as to the proper application of Wis. Stat. § 810.14 is frivolous.

## *CONCLUSION*

¶ 24. We conclude that the trial court's findings as to the diminution in value of Global's property are not clearly erroneous and, thus, the trial court did not err in awarding Global damages of $34,070.83. We further conclude that the trial court's award of damages in addition to replevin was appropriate under Wis. Stat. § 810.14. We therefore affirm the trial court's judgment.

¶ 25. Finally, we cannot conclude that Ecklund's appeal is frivolous pursuant to Wis. Stat. Rule 809.25(3). We therefore deny Global's motion for costs and fees on appeal.

*By the Court.*—Judgment affirmed.