**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**January 28, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2020AP1426**

**STATE OF WISCONSIN**

Cir. Ct. No.  2020ME4

**IN COURT OF APPEALS
DISTRICT IV**

IN THE MATTER OF THE MENTAL COMMITMENT OF **D.R.D.**:

ADAMS COUNTY,

    PETITIONER-RESPONDENT,

 V.

D. R. D.,

    RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Adams County: DANIEL G. WOOD, Judge.  *Affirmed.*

¶1    FITZPATRICK, P.J.[1]  D.R.D. appeals orders of the Adams County Circuit Court authorizing D.R.D.'s involuntary commitment and requiring D.R.D.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

to undergo treatment and take prescribed medication pursuant to WIS. STAT. §§ 51.20(1)(a) and 51.61(1)(g)3.[2] D.R.D. raises the following two arguments on appeal: (1) her procedural due process rights were violated because the County did not provide her sufficient notice of which standards of dangerousness under § 51.20(1)(a)2. the County would seek to prove at the evidentiary hearing; and (2) the County failed to establish by clear and convincing evidence that she is "dangerous," as required by § 51.20(1)(a)2. and (13)(e). I affirm.

## BACKGROUND

¶2    There is no dispute regarding the following material facts.

¶3    On January 29, 2020, Adams County Sheriff's Deputy Jacob Nielsen responded to a 911 call from D.R.D.'s residence "for a report of a suicidal subject." Dispatch reported the following information to Nielsen: "[J.B.] has a … gun stating he wants to kill her. Caller is outside. Emotional unstable. [J.B.] has been drinking." When Nielsen arrived at D.R.D.'s residence, J.B. was gone and D.R.D. "was yelling that she had been shot and was dying" and she made statements that "she was dead." Nielsen did not observe any injuries on D.R.D. As a result of that incident, Nielsen filed a statement of emergency detention pursuant to WIS. STAT. § 51.15(1), and D.R.D. was transported by ambulance to a hospital.

---

[2] An order directing an individual to take prescribed medication and undergo recommended treatment may be entered if the individual is committed under WIS. STAT. ch. 51 and the circuit court finds, following an evidentiary hearing, that the individual is not competent to refuse medication or treatment. *See* WIS. STAT. § 51.61(1)(g)3. D.R.D. challenges the commitment order which underlies the order for medication and treatment. D.R.D. does not argue that the circuit erred in finding that she is not competent to refuse medication and treatment. I therefore do not reach that issue and will not further mention the medication order unless required for context.

¶4      The signed statement of emergency detention commenced the proceeding for D.R.D.'s involuntary commitment for mental health treatment under WIS. STAT. § 51.20.    *See* WIS. STAT. § 51.15(5); ***Milwaukee Cnty. Combined Cmty. Servs. Bd. v. Haskins***, 101 Wis. 2d 176, 191, 304 N.W.2d 125 (Ct. App. 1980) (concluding the involuntary commitment of an individual is commenced by signing an emergency detention statement).  Chapter 51 permits a county to commit an individual if the county proves, by clear and convincing evidence, that the individual has a mental illness, is a proper subject for treatment, and is "dangerous" as defined by at least one of five standards set forth in § 51.20(1)(a)2.  *See* § 51.20(1)(a).

¶5      A probable cause hearing concerning D.R.D.'s involuntary commitment was held on February 3, 2020.  Near the end of that hearing, the circuit court concluded that there was probable cause to believe that D.R.D. was mentally ill, was a proper subject for treatment, and that D.R.D. "present[ed] a danger to herself or others."  The circuit court did not specifically state the statutory standard of dangerousness that applied, nor did the court check the box on the form order indicating that there was probable cause that D.R.D. was dangerous under the "fifth standard" of dangerousness under WIS. STAT. § 51.20(1)(a)2.e.  The court also concluded that there was probable cause to believe that D.R.D. needed medication and was not competent to refuse psychotropic medication.  The court ordered the continued detention of D.R.D. and the administration of medication.  The circuit court set the matter for an evidentiary hearing to be held February 12, 2020.

¶6      In preparation for the evidentiary hearing, the County filed with the circuit court a witness list which indicated that Dr. Nicholas Starr, a psychologist; Dr. John Coates, a licensed physician; and Deputy Nielson would testify at the

3

hearing. In addition, reports prepared by Dr. Starr and Dr. Coates recommending D.R.D.'s involuntary commitment were submitted to the court eight days before the evidentiary hearing The doctors agreed in their separate reports that D.R.D. was "dangerous." As detailed in the reports, Dr. Starr concluded that D.R.D. qualified for that designation under the first and fifth statutory standards of dangerousness described in WIS. STAT. § 51.20(1)(a)2., and Dr. Coates concluded that D.R.D. qualified under the fifth standard.

¶7      Both Dr. Starr and Dr. Coates testified at the evidentiary hearing. Consistent with their separate reports, both doctors testified that D.R.D. has a mental illness, is a proper subject for treatment, and is "dangerous," and both recommended D.R.D.'s involuntary commitment. More specific content of their testimony is discussed at greater length in the Discussion section below.

¶8      The circuit court determined that D.R.D. is mentally ill, a proper subject for treatment, and dangerous. The court entered an order on February 12, 2020, committing D.R.D. for six months to the care and custody of the Adams County Department of Health and Human Services.

¶9      On March 3, 2020, D.R.D. filed with the circuit court a notice of intent to pursue post-disposition relief. On April 6, 2020, the Adams County Register in Probate was informed by letter that D.R.D.'s current counsel had been appointed by the State Public Defender as appellate counsel for D.R.D. On July 17, 2020, counsel filed a motion requesting additional time to file a notice of appeal or motion for post-disposition relief. As requested, this court entered an order extending the time to file a post-disposition motion or notice of appeal in this matter to August 17, 2020. The circuit court's six-month commitment order expired on August 12, 2020. A notice of appeal was filed on August 17, 2020. To

my knowledge, neither party requested an accelerated briefing schedule, and the parties' briefs were filed between November 3 and December 23, 2020. This matter was assigned to me on January 5, 2021. The parties have not stated whether there has been a recommitment of D.R.D.

## DISCUSSION

¶10    D.R.D. raises two issues on appeal. D.R.D. argues that: (1) she was denied her due process rights because the County did not provide her with adequate notice of which of the five standards of dangerousness under WIS. STAT. § 51.20(1)(a)2. would be at issue at the final hearing; and (2) the evidence adduced at that final hearing was not sufficient to support the circuit court's determination that she was "dangerous" to herself or others. Before addressing these issues, I first explain the standard of review and the statutory framework for an involuntary commitment, and then, because the appealed order of involuntary commitment has expired, I take up the question of whether D.R.D.'s appeal is moot.

## I.  Standard of Review and the Statutory Framework for an Involuntary Commitment.

¶11    Review of a WIS. STAT. ch. 51 involuntary commitment presents a mixed question of fact and law. This court upholds a circuit court's findings of fact unless those findings are clearly erroneous. *Waukesha Cnty. v. J.W.J.*, 2017 WI 57, ¶15, 375 Wis. 2d 542, 895 N.W.2d 783. Whether the facts as found by the circuit court fulfill the statutory requirements for an involuntary commitment presents a question of law that this court reviews de novo. *Id.* "A determination of dangerousness [in the context of a ch. 51 commitment] is not a factual determination, but a legal one based on underlying facts." *Langlade Cnty. v. D.J.W.*, 2020 WI 41, ¶47, 391 Wis. 2d 231, 942 N.W.2d 277.

5

¶12    Under WIS. STAT. § 51.20(1)(a), a circuit court may order the initial commitment of an individual if the petitioner shows, by clear and convincing evidence, that the individual is:

    (1)  mentally ill;

    (2)  a proper subject for treatment; and

    (3)  currently dangerous under one of five alternative dangerousness standards set forth in the statutory subpart.

*See* § 51.20(1)(a)1.-2. and (13)(e); ***Portage Cnty. v. J.W.K.***, 2019 WI 54, ¶17, 386 Wis. 2d 672, 927 N.W.2d 509.  With regard to the third element noted above, which is the only element at issue in this appeal, § 51.20(1)(a)2.a.-e. identifies five different means of demonstrating dangerousness, each of which includes a requirement of recent acts or omissions establishing that the individual is a danger to himself or others.  *See* § 51.20(1)(a)2.a.-e.; ***D.J.W.***, 391 Wis. 2d 231, ¶30; ***J.W.K.***, 386 Wis. 2d 672, ¶17.

¶13    I next explain why D.R.D.'s appeal is not moot even though the commitment order from which D.R.D. appeals has expired.

## II.  D.R.D.'s Appeal is not Moot.

¶14    Mootness is a question of law that this court reviews de novo. ***Marathon Cnty. v. D.K.***, 2020 WI 8, ¶16, 390 Wis. 2d 50, 937 N.W.2d 901.  "An issue is moot when its resolution will have no practical effect on the underlying controversy."  ***Id.***, ¶19 (quoting ***J.W.K.***, 386 Wis. 2d 672, ¶11).  Generally, this

court does not reach issues that are moot but may overlook mootness under certain circumstances that are not at issue here.[3]  *Id.*   An appeal of an expired initial commitment order may be moot.  *Id.*, ¶22; ***Winnebago Cnty. v. Christopher S.***, 2016 WI 1, ¶¶30, 32, 366 Wis. 2d 1, 878 N.W.2d 109.  However, when a person remains subject to the collateral consequence of the commitment order of the prohibition against possessing any firearms after the order has expired, an expired commitment order is "not moot."  ***D.K.***, 390 Wis. 2d 50, ¶¶22, 25 (explaining that a decision in D.K.'s favor would void the firearms band and would thus have a practical effect).  Here, the involuntary commitment order expired on August 12, 2020.   However, the involuntary commitment order contained a restriction prohibiting D.R.D. from possessing any firearm.   That restriction was not terminated with the expiration of the involuntary commitment order, and D.R.D. remains subject to the firearms ban.  As the County concedes, because a decision in D.R.D.'s favor would void the firearms ban, D.R.D.'s appeal of the involuntary commitment is not moot.  *See id.*, ¶25.

¶15    I now address the issues raised by D.R.D. on appeal.

---

[3]  We may overlook mootness if the issue falls into one of the following five exceptions:

> (1) the issue is of great public importance; (2) the issue involves the constitutionality of a statute; (3) the issue arises often and a decision from this court is essential; (4) the issue is likely to recur and must be resolved to avoid uncertainty; or (5) the issue is likely of repetition and evades review.

*Marathon Cnty. v. D.K.*, 2020 WI 8, ¶19, 390 Wis. 2d 50, 937 N.W.2d 901.

## I. D.R.D. Forfeited Her Due Process Challenge.

¶16    D.R.D. contends that she was denied procedural due process because she did not receive sufficient notice of which standards of dangerousness the County would seek to prove at the evidentiary hearing.

¶17    In *Lessard v. Schmidt*, 349 F. Supp. 1078 (E.D. Wis. 1972) (vacated and subsequently reinstated), a federal court concluded that an individual subject to involuntary commitment must receive notice of the involuntary commitment proceedings "sufficiently in advance of scheduled court proceeding so that reasonable opportunity to prepare will be afforded."[4]  *Id.* at 1092 (quoting *In re Gault*, 387 U.S. 1, 33 (1967)).   Among other things, the individual must be informed of "the standard upon which he [or she] may be detained."  *Id.*

¶18    D.R.D. argues that the County did not sufficiently identify, prior to the evidentiary hearing, which of the dangerousness standards set forth in WIS. STAT. § 51.20(a)2.a.-e. the County believed were satisfied by her conduct.  D.R.D. argues that the County thus failed to satisfy *Lessard*'s statement that D.R.D. be given notice of "the standard upon which [s]he may be detained" sufficient to allow her a "reasonable opportunity to prepare" for the commitment hearing.  *See Lessard*, 349 F. Supp. at 1092.

---

[4] The federal court held in *Lessard v. Schmidt*, 349 F. Supp. 1078 (E.D. Wis. 1972) that Wisconsin's laws then in place providing for civil commitments of those alleged to be mentally ill were constitutionally deficient.  Following *Lessard*, the Wisconsin legislature modified the law governing mental health and enacted new emergency detention and involuntary commitment statutes.  *See* 1975 Wis. Act 430, § 11; *Outagamie Cnty. v. Michael H.*, 2014 WI 127, ¶26, 359 Wis. 2d 272, 856 N.W.2d 603.

¶19    But, D.R.D. concedes that she did not raise this due process claim before the circuit court, and she did not request in the circuit court further specificity regarding the statutory standards at issue or an adjourned hearing to prepare based on that further specificity.  An issue that is raised for the first time on appeal will generally not be considered.  ***Arsand v. City of Franklin***, 83 Wis. 2d 40, 55, 264 N.W.2d 579 (1978).  "It is a fundamental principle of appellate review that issues must be preserved at the circuit court."  ***State v. Huebner***, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727; *see also* ***Vollmer v. Luety***, 156 Wis. 2d 1, 10, 456 N.W.2d 797 (1990) (stating that "'[o]ne of the rules of well nigh universal application established by courts in the administration of the law is that questions not raised and properly presented for review in the [circuit] court will not be reviewed on appeal'" (quoted source omitted)).  This concept is known as the "forfeiture rule" because issues not preserved in the circuit court are deemed forfeited.[5]  ***Huebner***, 235 Wis. 2d 486, ¶11 and n.2.  "The [forfeiture] rule is not merely a technicality or a rule of convenience; it is an essential principle of the orderly administration of justice."  ***Id.*** (citing ***Freytag v. Commissioner of Internal Revenue***, 501 U.S. 868, 894-95 (Scalia, J., concurring) (citing 9 C. Wright and A. Miller, *Federal Practice and Procedure* § 2472 at 455 (1971))).  "The rule promotes both efficiency and fairness, and 'go[es] to the heart of the common law tradition and the adversary system.'"  ***Id.*** (quoting *State v. Caban*, 210 Wis. 2d 597, 604-05, 563 N.W.2d 501 (1997)).  This rule of forfeiture prevents circuit courts from being "blindside[d]" by appellate courts and gives

---

[5] The Wisconsin Supreme Court has recognized that the previously used phrase, "'waiver rule' is imprecise," and it is "better to label" this as the "'forfeiture rule[]' because it refers to the forfeiture of a right by silence rather than the intentional relinquishment of a known right." *State v. Huebner*, 2000 WI 59, ¶11 n.2, 235 Wis. 2d 486, 611 N.W.2d 727.

circuit courts the ability to "correct any error with minimal disruption of the judicial process, eliminating the need for appeal."[6] *Townsend v. Massey*, 2011 WI App 160, ¶¶25-26, 338 Wis. 2d 114, 808 N.W2d 155 (quoting *State v. Ndina*, 2009 WI 21, ¶30, 315 Wis. 2d 653, 761 N.W.2d 612); *see also State v. Rogers*, 196 Wis. 2d 817, 827, 539 N.W.2d 897 (Ct. App. 1995) (explaining that the forfeiture rule is based on a policy of judicial administration).

¶20     D.R.D. argues that, in spite of her forfeiture of her due process argument, I should nevertheless address the merits of that argument. I decline to do so based on the important reasons just summarized in the case law regarding why we have the forfeiture rule. In addition, the forfeiture rule "prevents attorneys from 'sandbagging' errors, or failing to object to an error for strategic reasons," and later stating that the error is grounds for reversal. *See Huebner*, 235 Wis. 2d 486, ¶12. These reasons are sufficient to deny D.R.D.'s request.

¶21     Even beyond those reasons, D.R.D. refuses to address whether the reports of Dr. Starr and Dr. Coates, which D.R.D. had available to her eight days before the evidentiary hearing, provided sufficient notice to satisfy due process. Those reports provided express notification of all the facts upon which the County proceeded at the evidentiary hearing and of the standards of dangerousness which the circuit court ultimately found were satisfied. However, D.R.D. ignores this question entirely. *See State v. Pettit*, 171 Wis. 2d 627, 646-67, 492 N.W.2d 633

---

[6] When a claim is forfeited, that issue is typically addressed in the context of ineffective assistance of counsel. *State v. Counihan*, 2020 WI 12, ¶28, 390 Wis. 2d 172, 938 N.W.2d 530. "That is, the defendant must demonstrate that counsel's failure to object constituted deficient performance and that such deficient performance prejudiced the defendant." *Id.*; *see Strickland v. Washington*, 466 U.S. 668, 687 (1984).

(Ct. App. 1992) (stating an appellate court will not decide issues that are inadequately briefed).

¶22    Moreover, D.R.D. does not identify any facts that would support a conclusion that she was deprived of a reasonable opportunity to prepare for the evidentiary hearing.  D.R.D. does not argue how, if at all, the alleged lack of specificity from the County about the dangerousness standard inhibited her ability to prepare her defense, and she does not identify any pretrial investigations she could have done, or trial strategies she could have employed, if she had been provided different notification of the dangerousness standards.  *See **id.***

¶23    Accordingly, I conclude that D.R.D.'s due process argument is forfeited, and therefore do not address whether the County violated D.R.D.'s due process rights as argued by D.R.D.

## II.  Sufficiency of the Evidence.

¶24    D.R.D. contends that the County failed to establish by clear and convincing evidence that she is dangerous under WIS. STAT. § 51.20(1)(a)2.  I now recount the material testimony and the circuit court's findings and conclusions from the evidentiary hearing.

### A. Material Testimony and the Circuit Court's Findings and Conclusions.

¶25    Dr. Starr testified to the following.[7]  He met with D.R.D. to conduct an evaluation of D.R.D. while she was at the VA Hospital in Tomah.  During the evaluation, D.R.D. told Dr. Starr that Starr was "interrupt[ing] her geological studies," that "she was getting a master's degree," and that she was "being held hostage."  Dr. Starr observed that D.R.D. was "hyper verbal" and "had a hard time controlling herself."  Dr. Starr's in-person meeting with D.R.D. ended after five minutes because D.R.D. became "increasingly aggressive" and refused to further participate in the evaluation.

¶26    As part of his evaluation of D.R.D., Dr. Starr reviewed D.R.D.'s records at the VA Hospital and spoke with hospital staff.  D.R.D.'s hospital records "indicated that [D.R.D.] was making suicidal comments" while at the hospital.  The records also indicated that D.R.D. reported to staff that she "hears the voice of God," and "hears different voices on the left side of her brain and the right side of her brain."

¶27    Based on his review of D.R.D.'s records, discussions with staff, and his personal observations, Dr. Starr came to the conclusion that D.R.D. suffers from "unspecified bipolar disorder" and that she was a proper subject for in-patient treatment  Dr. Starr also stated that D.R.D. was a danger to herself or to others based upon her suicidal comments and untreated mental illness, and that she

---

[7] D.R.D. interrupted the testimony of Dr. Starr by making her own objection even though she was represented by counsel.  Later at the evidentiary hearing, D.R.D. continually interrupted the circuit court's findings and conclusions.  After circuit court patiently dealt with D.R.D.'s continued interruptions, D.R.D. was removed from the courtroom for the final, brief portion of the evidentiary hearing.

was not competent or capable of refusing to take prescribed medication because D.R.D. "was actively manic and psychotic."

¶28    Dr. Coates testified to the following. He met with D.R.D. at the VA hospital for approximately twenty-five minutes. Dr. Coates also reviewed D.R.D.'s records from that hospital. During Dr. Coates' meeting with D.R.D., D.R.D. claimed that "she was a descendent of Moses," she was "being treated at Walter Reed [H]ospital," she "was being used for … human trafficking," and she had "been hearing the voices of family members … that[] [are] deceased." According to Dr. Coates, D.R.D. demonstrated "a combination of some mood instability, delusions, [and] hallucinations," which "are all signs and symptoms of a psychotic illness." Dr. Coates opined that D.R.D. shows signs of a psychotic disorder, either a bipolar disorder or schizophrenia.

¶29    Dr. Coates stated that D.R.D. was dangerous to herself because "[w]hen she's in an acute psychotic stage she's unable to independently care for herself [and provide for her basic needs] or properly socialize" and the behavior of someone who is psychotic is unpredictable in terms of whether that person will act on his or her delusion and "what type of behavior might surface." Dr. Coates opined that D.R.D. is a proper subject for treatment and that D.R.D. was not capable of making an informed decision as to whether to accept or reject treatment and medication. Dr. Coates also stated that D.R.D. needed inpatient treatment at that time.

¶30    Near the end of the evidentiary hearing, the circuit court determined that the parties' sole dispute concerned whether D.R.D. is a danger to herself or others. In other words, D.R.D. did not dispute that she has a mental illness and is

a proper subject for treatment. The circuit court found as follows regarding D.R.D.'s dangerousness:

> Dr. Starr testified … that [D.R.D.] is or was at the time of [his examination of D.R.D.] suicidal or had presented as very recently suicidal in his review of the file and during his conversation with her. Dr. Coates testified to a more generalized danger to self and also alluded to danger to others in part related to the inherent unpredictability of the illness and the current manifestation of the illness.

¶31 The court found that, based upon the testimony of Dr. Starr and Dr. Coates, as well as the testimony of Deputy Nielsen who recounted at the hearing the events that led to D.R.D.'s emergency commitment (as has already been described), D.R.D. "does at this time present a danger to herself or others."[8]

¶32 D.R.D. challenges the circuit court's finding that Dr. Starr testified that, at the time he attempted to examine D.R.D., she was, or had been very recently, suicidal. D.R.D. argues that the statement of emergency detention and the attached report make no reference to suicide or an intent on D.R.D.'s part to harm herself and that Dr. Starr must have "misunderstood" the information contained in the those documents D.R.D.'s argument goes to the issue of Dr. Starr's credibility. That is to say, D.R.D. is arguing that Dr. Starr's testimony that D.R.D. was suicidal is not credible.

¶33 The circuit court is the ultimate arbiter of a witness's credibility. *Cogswell v. Robertshaw Controls Co.*, 87 Wis. 2d 243, 250, 274 N.W.2d 647 (1979). This court will not overturn a credibility determination on appeal unless

---

[8] The circuit court did not specify which statutory dangerousness standard it found had been satisfied in the sense that the circuit court's ruling did not explicitly refer to a specific statutory subpart at that point in the proceeding. I address that in more detail later in this opinion.

the testimony upon which it is based is inherently or patently incredible or in conflict with the uniform course of nature or with fully established or conceded facts. *Global Steel Prods. Corp. v. Ecklund Carriers, Inc.*, 2002 WI App 91, ¶10, 253 Wis. 2d 588, 644 N.W.2d 269.

¶34    At the evidentiary hearing, Dr. Starr was questioned as follows on direct examination about D.R.D. being suicidal:

> [Question]: Along with your attempt to talk with [D.R.D.] did you review any records at the VA hospital?
>
> [Dr. Starr]:  I did, yes.
>
> [Question]:  And … did you also besides reviewing records did you talk to any of the staff at the hospital?
>
> [Dr. Starr]:  I did, yes.
>
> [Question]:  Based on your review of the records and discussions … were you able to determine to a reasonable degree of … psychiatric certainty whether or not [D.R.D.] suffers from a mental illness at this time?
>
> [Dr. Starr]:  Yes.
>
> ….
>
> [Question]: … do you believe that [D.R.D.] is a danger to herself or to others?
>
> [Dr. Starr]:  I do believe.
>
> [Question]:  And tells us how or why you believe that?
>
> [Dr. Starr]: *The records indicated* that she was making suicidal comments ….

(Emphasis added.)

¶35    Dr. Starr did not specify exactly in that last answer what "records" he was referring to.  However, leading up to that point in Dr. Starr's testimony,

15

Dr. Starr testified that he had reviewed D.R.D.'s records at the VA Hospital. The questions and Dr. Starr's answers immediately following Dr. Starr's reference to the hospital's records refer generally to "records." No reference is made in the surrounding testimony to the statement of emergency detention or the report attached to that statement. The only logical conclusion from the record and the circuit court's findings is that Dr. Starr's general references to "records" were to the records of the VA Hospital. D.R.D. does not argue, or point to any evidence, that records of the VA Hospital did not contain references to D.R.D. making suicidal comments or that Dr. Starr otherwise falsely testified that VA Hospital records indicated that D.R.D. was suicidal. Accordingly, I conclude that the circuit court's credibility determination concerning Dr. Starr's testimony is not clearly erroneous and therefore uphold that finding. *See id.*

## B. The Evidence Was Sufficient to Support the Circuit Court's Order for D.R.D.'s Involuntary Commitment.

¶36    When reviewing whether evidence is sufficient to support findings made by the circuit court without a jury, this court will not reverse those findings unless those are contrary to the great weight and clear preponderance of the evidence. *See Cogswell*, 87 Wis. 2d at 249.

¶37    To repeat, dangerousness may be shown by any of the five standards listed in WIS. STAT. § 51.20(1)(a)2. The circuit court did not explicitly specify the standard or standards of dangerousness it found applied by calling out at the

16

hearing a statutory subpart.[9] However, I agree with the County that the court, through its discussion of Dr. Starr's testimony and its other findings, found that at least the first standard, § 51.20(1)(a)2.a., applied. I now address the sufficiency of the evidence under that standard.

¶38 A person is dangerous within the meaning of WIS. STAT. § 51.20(1)(a)2.a. if the individual "[e]vidences a substantial probability of physical harm to himself or herself as manifested by evidence of recent threats of or attempts at suicide or serious bodily harm." Sec. 51.20(1)(a)2.a. Dr. Starr testified that records from the VA Hospital, where D.R.D. was being detained, indicated that D.R.D. had made statements that the circuit court reasonably saw as suicidal threats within the context of D.R.D.'s behaviors. As explained above, the circuit court found this testimony of Dr. Starr credible, and there is nothing in the record to suggest otherwise. I conclude that the above-mentioned evidence was sufficient to prove that there was a substantial probability of D.R.D. causing

---

[9] In ***Langlade Cnty. v. D.J.W.***, 2020 WI 41, 391 Wis. 2d 231, 942 N.W.2d 277, the supreme court held that "going forward circuit courts in recommitment proceedings are to make specific factual findings with reference to the subdivision paragraph of WIS. STAT. § 51.20(1)(a)2. on which recommitment is based." ***D.J.W.***, 391 Wis. 2d 231, ¶¶3, 43. ***D.J.W.*** was issued on April 24, 2020. D.R.D. acknowledges that her evidentiary hearing was held *before* ***D.J.W.*** was issued and that the supreme court "expressly limited its imposition of the requirement that circuit courts specify which of the five standards of dangerousness their rulings are based on to *future* cases," that is to say, in hearings that take place after ***D.J.W*** was issued*.* (Emphasis added.) However, D.R.D. argues that "due process requires that the ***D.J.W.*** requirement apply to her case as well." Fatal to D.R.D.'s argument is D.R.D.'s failure to present this court with any argument as to why due process requires that the holding in ***D.J.W.*** be applied retroactively to her case, contrary to our supreme court's binding directive that its holding apply prospectively. *See* ***Associates Fin. Servs. Co. of Wis., Inc. v. Brown***, 2002 WI App 300, ¶4 n.3, 258 Wis. 2d 915, 656 N.W.2d 56 (stating this court does not consider conclusory assertions and undeveloped arguments) and ***Cook v. Cook***, 208 Wis. 2d 166, 189-90, 560 N.W.2d 246 (1997) (holding that the court of appeals is bound by supreme court decisions). Accordingly, I reject this argument.

17

physical harm to herself as manifested by evidence that D.R.D. had made recent threats of suicide.[10]

¶39 Accordingly, I conclude that the evidence was sufficient to support the circuit court's order granting D.R.D.'s commitment.

## CONCLUSION

¶40 For the foregoing reasons, the orders of the circuit court are affirmed.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[10] Because I conclude that the evidence was sufficient to prove that D.R.D. was dangerous under the first standard, I need not address the County's argument that the evidence was sufficient to prove that D.R.D. was also dangerous under the fifth standard. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (if a decision on one point disposes of the appeal, the court will not decide other issues raised).