COURT OF APPEALS

DECISION

DATED AND FILED

April 9, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP2022**

STATE OF WISCONSIN

Cir. Ct. No. 2023SC15427

IN COURT OF APPEALS
DISTRICT I

LEOLA VOEGTLINE,

PLAINTIFF-RESPONDENT,

V.

CLARION BANNACH,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Milwaukee County: MICHAEL J. HANRAHAN, Judge. *Affirmed.*

¶1 WHITE, C.J.[1] Clarion Bannach appeals from the judgment in replevin that returned possession of a dog to Leola Voegtline, who filed a small

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

claims action for replevin. Bannach argues that there was insufficient evidence to support the circuit court's finding that the dog Bannach found was the dog that Voegtline owned and lost; therefore, he asserts that the judgment in replevin was erroneous. Upon review, we affirm.

## BACKGROUND

¶2  In June 2023, Voegtline filed a small claims action for the return of her dog that had gone missing five years earlier, in September 2018. She alleged that her dog, Marley, a black and white toy poodle, had accidentally gotten loose from her yard near South 54th Street and Oklahoma Avenue. She alleged that her daughter saw Marley at a park in June 2023 with Bannach.

¶3  Bannach responded to the complaint with a discovery request relating to Voegtline's evidence of ownership of the dog. Voegtline's responses indicated that the dog was not found despite searching, putting up flyers, posting about the lost dog on social media, notifying MADACC[2] and Lost Dogs of Wisconsin, and searching the lists of found dogs on MADACC and the Wisconsin Humane Society websites. Voegtline produced a veterinary record from July 2016 that referenced Marley as a male, black and white toy poodle born in 2012. Voegtline stated that she purchased Marley through a private party sale on Craigslist.com for $300.

¶4  A police record of Voegtline's call in June 2023 reported that Voegtline's daughter approached Bannach in a park. When an officer met with

---

[2] MADACC is the abbreviation for the Milwaukee Area Domestic Animal Control Commission.

Bannach, he reported that his son found the dog, who he called Reggie, near South 91st Street and Morgan Avenue about six years ago.

¶5      The case proceeded to a trial on the replevin action on September 27, 2023, during which the court heard testimony from Voegtline; her husband, John Voegtline; her daughter, Jerah Ramos; and Bannach's son, Brian Bannach.

¶6      Voegtline testified that she purchased Marley from Craigslist in 2012, when the dog was approximately three months old. John then testified that he was doing yardwork in September 2018 and he left the fence gate unlatched for a short time. Voegtline submitted side-by-side photographs of Marley from 2017-2018 and those taken by her daughter at the park in 2023.

¶7      Voegtline testified that when they noticed that Marley was missing in September 2018, she, her husband, her daughter, her son-in-law, and her grandson searched the neighborhood looking for him. She posted flyers from 43rd Street to 92nd Street along Oklahoma Avenue. Her daughter contacted Lost Dogs of Wisconsin. Voegtline put up a flyer at MADACC and reviewed the dogs that had been found.

¶8      Ramos testified that on June 1, 2023, she was with her son at a last-day-of-school picnic at a playground when she thought she saw Marley across the street. She approached Bannach and explained she was looking for a lost toy poodle. She asked if he found this dog on Oklahoma Avenue. She stated that Bannach responded that he found the dog on 90th Street, not Oklahoma. She told him that she believed he had her dog. Ramos testified that Bannach told her that his dog's name was Reggie and he disagreed that her videos of Marley showed the same dog. Ramos testified that Bannach said that his son found Reggie and took him to a veterinarian, and that the vet reported that Reggie was blind in one eye.

Ramos testified that the dog was very happy to see her and whined, wanting to be with her. She stated that she asked Bannach to exchange contact information, but he did not want to.

¶9 Upon the court's questioning, Voegtline testified that she did not file a police report in 2018, but she did submit copies of a lost dog flyer from 2018 and a post on a social media account.

¶10 During cross-examination, Voegtline testified that Marley was not licensed, microchipped, or tattooed for identification purposes, and that while he was wearing a collar when he was lost, there were no tags on the collar. Voegtline did not have a receipt for her purchase of Marley because her basement had flooded, destroying personal belongings. She stated that Marley had never run away before and he was not the kind of dog that tried to leave the house when the door opened.

¶11 In its defense case, Bannach called Brian, who testified that in the second week of August 2018, he and his father were driving near West Cold Spring Road and South 84th Street on a rainy day when they saw a tiny dog in the oncoming lane of traffic. He testified that the dog was extremely wet, weary and fatigued, and he pulled over the pick up the dog. He said they proceeded to take the dog to the Loomis Road Animal Hospital. Brian testified that veterinary clinic performed a thorough examination, and then told him and his father that the dog appeared abandoned, and the clinic would post the dog's photograph on its "internet website search, which will include MADACC, Humane Society, all outlying counties of Greenfield, which would include Milwaukee and surrounding." Brian stated that the clinic staff told him that in Greenfield, the proper protocol was that if there were no response to the alert about the dog after

4

four months, the finder could become the owner. Brian stated that no alert on the found dog occurred. Brian testified that the personnel at the veterinary clinic had changed since 2018; he had no records from that visit.

¶12 Brian testified that Reggie had lived with his parents ever since and he had "never seen a more friendlier, docile, and hospitable dog than Reggie." Brian stated that the dog was friendly with strangers. Brian stated that Reggie's vision had completely deteriorated due to irreversible cataract damage and the dog was now completely blind. He stated his father had spent over $2,000 on veterinary bills for Reggie. Bannach's counsel also informed the court that Bannach did not have any veterinary records to submit because the clinic changed hands.

¶13 The circuit court issued an oral ruling, finding that the dog Ramos saw with Bannach in June 2023 was Marley, the dog owned by Voegtline. The court referenced that "from the markings, the size, the nature of the dog" and the side-by-side photographs submitted by Voegtline, it was the same dog because the markings were identical. Further, the court found it was the same dog because the dog was lost and found in the same area. The court found that the dog was "very friendly," but the court would not put much weight on the friendliness of the dog because it "sounds like this is a dog that's friendly to everybody[.]"

¶14 The circuit court found that Voegtline and her family members "credibly testified" about Marley's purchase and how long they owned him. The court noted that Voegtline had "all kinds of photos of the dog" and the dog was "an important part of the household."

¶15 The circuit court found that the dog was not legally abandoned. The court concluded that based on the photographs, the dog had been kept in good

condition, groomed, and was not mistreated prior to him getting loose. The court found that Voegtline and family went to great efforts to try to find Marley, turning to Lost Dogs of Wisconsin and making flyers. The court referenced that Voegtline talked to groomers and to MADACC.

¶16 The court found that the dog's condition when found was due to what happened after he got loose from Voegtline's yard. The court further found that Brian's testimony about the date was "an error." The court concluded that the flyers clearly stated a September 2018 date for the missing dog and Brian's memory must be faulty. The court found that the veterinarian records from when Bannach and Brian found and took in the dog would have cleared up the date, but "without those vet records and based on the evidence that I have, I find that the recollection of the timeframe where the Bannachs are indicating it's early or the first two weeks of August of 2018 … I find that that is a faulty memory and incorrect." The court found that the dog belonged to Voegtline and that she was entitled to a writ of replevin to retake possession of the dog.

¶17 On September 10, 2023, Bannach filed a motion for relief from judgment or, in the alternative, a stay pending appeal.[3] Bannach argued that Voegtline failed to prove by a preponderance of the evidence the identity of the dog and her right to possession. The circuit court conducted a hearing on Bannach's motion on October 19, 2023. The court denied Bannach relief, rejecting Bannach's argument that the court applied an incorrect legal standard for dog ownership. The court then denied Bannach's motion for a stay pending

---

[3] The circuit court issued a writ of replevin on September 27, 2023, which required Bannach to return Marley to Voegtline after October 13, 2023. The court stayed this writ when Bannach filed his motion for relief from judgment.

appeal. The court issued a writ of replevin, identical to the original writ except for the effective date, to return the dog to Voegtline effective immediately. Bannach now appeals this judgment in replevin.

## DISCUSSION

¶18     "Dogs belong to a distinct class of domestic animals." *Hagenau v. Millard*, 182 Wis. 544, 548, 195 N.W. 718 (1923). We consider them "companions and playmates … protectors of life and of property, and generally manifest human instincts and emotions in a very marked degree." *Id.* However, dogs are "considered property, and the owners are protected in their property rights by law." *Id.* Here, as the circuit court recognized, we have two families who feel a great sense of connection and ownership over one dog. This court reviews Bannach's challenge to the judgment in replevin and under that standard, we conclude that the circuit court's judgment must be affirmed.

¶19     "Replevin is an action for possession" of disputed property. *Mueller v. TL90108, LLC*, 2020 WI 7, ¶12, 390 Wis. 2d 34, 938 N.W.2d 566. "[W]hich party is entitled to possession of the disputed property becomes the ultimate fact question in a replevin action." *Ford Motor Co. v. Lyons*, 137 Wis. 2d 397, 468, 405 N.W.2d 354 (Ct. App. 1987).

¶20     To succeed on a replevin claim, the plaintiff has the burden to show that "the plaintiff is entitled to possession of the property involved" and that the property was unlawfully detained by the defendant.[4] WIS. STAT. § 810.13(1);

---

[4] Under the replevin statutes, the circuit court must also find the value of the property and any damages suffered by the prevailing party. WIS. STAT. § 810.13(1). There is no dispute over value or damages in this case.

7

*First Nat. Bank of Glendale v. Sheriff of Milwaukee Cnty.*, 34 Wis. 2d 535, 538, 149 N.W.2d 548 (1967). Whether the circuit court's judgment in replevin complied with WIS. STAT. §§ 810.13, 810.14 is a question of law that this court reviews independently. *Global Steel Prod. Corp. v. Ecklund*, 2002 WI App 91, ¶11, 253 Wis. 2d 588, 644 N.W.2d 269.

¶21 Bannach challenges the sufficiency of the evidence to support the circuit court's finding that Marley and Reggie were the same dog and Voegtline proved her ownership of the dog. He asserts that the circuit court's factual findings were erroneous and we must overturn the circuit court's judgment in replevin.

¶22 We will not disturb the circuit court findings of fact unless clearly erroneous. WIS. STAT. § 805.17(2). "It is not within our province to reject an inference drawn by a fact finder when the inference drawn is reasonable." *Global Steel Prod. Corp.*, 253 Wis. 2d 588, ¶10. "We will search the record for evidence to support the findings that the trial court made, not for findings that the trial court could have made but did not." *Id.* "The trial court is the arbiter of the credibility of witnesses, and its findings will not be overturned on appeal unless they are inherently or patently incredible or in conflict with the uniform course of nature or with fully established or conceded facts." *Id.*

¶23 We begin with the first prong of a replevin judgment, that Voegtline is "entitled to possession of the property involved," Marley. *See First Nat. Bank of Glendale*, 34 Wis. 2d at 538. The circuit court concluded that Voegtline established through credible testimony that she purchased Marley in 2012. As dogs are property, Voegtline's entitlement to the possession and ownership of Marley would not have been extinguished by the dog running away. The court

8

specifically found that Voegtline did not abandon Marley and that the dog's ill condition when found was based on his time when loose.

¶24 Although Bannach argues that Voegtline did not have evidence of ownership such as a receipt, municipal license, microchipping, or a tattoo, this court searches "the record for evidence to support the findings that the trial court made, not for findings that the trial court could have made but did not." *Global Steel Prod. Corp.*, 253 Wis. 2d 588, ¶10. The circuit court's conclusion was based on the evidence before it—primarily Voegtline's testimony. There was no evidence that contradicted or undermined Voegtline's testimony about purchasing Marley from Craigslist. The court's finding is not "against the great weight and clear preponderance of the evidence." *Phelps v. Physicians Ins. Co. of Wis.*, 2009 WI 74, ¶39, 319 Wis. 2d 1, 768 N.W.2d 615 (citation omitted). As such, the court's finding that Voegtline is entitled to ownership of Marley satisfies the first prong of the replevin action. Therefore, our inquiry must focus on the second prong of wrongful detainer, that is, whether Bannach was withholding Voegtline's property when he refused to return Marley, or whether Bannach was caring for another dog entirely that did not belong to Voegtline.

¶25 For the second prong, our inquiry, in essence, is whether this is the same dog. The circuit court found that this was the same dog based on the markings on the dogs shown in the side-by-side photographs of Marley in 2017-2018 and the dog in Bannach's possession in 2023, the location where Marley was lost and Bannach found a dog, and the dog's friendly temperament. First, the circuit court found that the photographs showed the same dog based on markings and size. Our examination of the record shows a clear resemblance between the dogs in the photographs, which show dogs of similar breed, distinctive black and white coloration, and size. Second, a dog was lost and a dog was found from

9

locations estimated to be about three miles apart, which is a feasible distance for a dog to travel. It is unlikely that there would be two dogs of similar breed, age, sex, coloration, and markings both lost and found in roughly the same time and location, in light of only one dog being now identified.[5] Third, the court itself discounted the weight of the dog's friendly temperament. While Ramos testified that the dog was friendly to her as an indication that the dog knew her, Brian testified that the dog was generally very friendly.

¶26 While Bannach argues these findings are insufficient to support judgment in replevin, none of them have been disputed or challenged such that we could consider them "against the great weight and clear preponderance of the evidence." *Phelps*, 319 Wis. 2d 1, ¶39 (citation omitted). Our review of the record shows sufficient evidence to support the circuit court's findings.[6] *Global Steel Prod. Corp.*, 253 Wis. 2d 588, ¶15. The circuit court fulfilled its function to

---

[5] Although the record reflects that the circuit court accepted as true Brian's testimony of where Reggie was found, the court discounted his testimony that Reggie was found in August 2018 based on a faulty memory. We infer from these findings that the court found parts but not all of Brian's testimony credible. The circuit court is the "ultimate arbiter of credibility" and we will sustain its findings "unless they are inherently or patently incredible or in conflict with the uniform course of nature or with fully established or conceded facts." *Global Steel Prod. Corp. v. Ecklund*, 2002 WI App 91, ¶10, 253 Wis. 2d 588, 644 N.W.2d 269. We have no conflicting evidence in the record to have reason to disturb the circuit court's credibility determination.

[6] We note that the identity of property is rarely an issue in a replevin action. While Bannach has argued that certain unpublished cases support his argument that replevin should have been denied, instead, we note that a typical replevin action involving dogs is a dispute over proof of ownership, not a dispute over the identity of the dog. *See e.g., Hathaway v. Greenwood*, No 2020AP1871, unpublished slip op. (WI App Apr. 29, 2021) (considering ownership of a dog after a couple broke up); *Steele v. Latko*, No 2015AP1060, unpublished slip op. (WI App Feb. 18, 2016) (considering ownership of a dog transferred by contractual agreement); *Hollander v. Wegman*, No. 2012AP2642, unpublished slip op. (WI App July 30, 2013) (considering ownership of the plaintiff's late mother's dog); *Peebles v. Arnold*, No 2011AP2938, unpublished slip op. (WI App Apr. 17, 2012) (considering ownership of a dog the plaintiff had purchased with the defendant's late brother, but the dog had been living with the defendant since her brother's death).

resolve conflicts in the evidence and we conclude its findings are not clearly erroneous. *Id.*

¶27    Finally, Bannach makes a new argument on appeal that Voegtline lost legal ownership of Marley when she did not claim the dog within five days of MADACC posting that the dog had been found.[7]  As a general rule, "issues not raised in the circuit court will not be considered for the first time on appeal." *Marotz v. Hallman*, 2007 WI 89, ¶16, 302 Wis. 2d 428, 734 N.W.2d 411. Bannach had sufficient opportunity to develop this argument in the replevin hearing and in the hearing on his motion for relief from judgment, but failed to do so.  We decline to address this argument further.

¶28    We conclude that the verdict for judgment in replevin must stand. The circuit court found that Voegtline established ownership of Marley.  The circuit court found that the dog Bannach found was Marley.  There is ample evidence in the record to support these findings.  Therefore, at the time the replevin action was filed, Bannach was wrongfully detaining Voegtline's property. "In a replevin action, proof that property was wrongfully detained at the time of the commencement of the action is sufficient to meet the replevin requirement." *Capitol Sand & Gravel Co. v. Waffenschmidt*, 71 Wis. 2d 227, 232, 237 N.W.2d 745 (1976).  Therefore, we conclude there was sufficient evidence to satisfy the replevin standard.  Accordingly, we affirm the circuit court's judgment in replevin.

---

[7] Although Bannach's briefing is slightly unclear on the statutory basis of claim, it seems to arise from WIS. STAT. § 173.19(1), which provides that an animal taken into custody as an abandoned or stray animal may be treated as an unclaimed animal if, within four days after custody is taken of the animal, the animal is not claimed by and returned to its owner.

**CONCLUSION**

¶29 This case arises out a difficult situation no pet owner would like to face. We conclude that the circuit court's findings were not clearly erroneous and the judgment in replevin was granted in compliance with WIS. STAT. §§ 810.13, 810.14.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.